**No. 2023-2073**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

MICHAEL P. CHISENA,
*Appellant*

v.

MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION and
AARON JUDGE,
*Appellees*

---

Appeal from the United States Patent and Trademark Office, Patent and Trial Appeal Board (Opposition Nos. 91240180, 91242556, 91243244)

---

**CORRECTED INFORMAL OPENING BRIEF**

**NON-CONFIDENTIAL VERSION**

**BY APPELLANT MICHAEL P. CHISENA**

-----------------------------------------------------------------------------------------

**CONTINUATION PAGES**

**TO**

**FORM 14**

## Table of Contents

Introduction ........................................ 4

Review by this Court ........................................ 4

Relevant Facts ........................................ 5

My word mark: "HERE COMES THE JUDGE" ........................................ 5

My word mark "ALL RISE" ........................................ 5

My design mark ........................................ 5

Argument

Point 1 - Trademark Act Section 2(d) ........................................ 6-9

Point 2 - Opposers must establish proprietary rights in a pleaded common law mark ........................................ 9-10

Point 3 - Each Opposition limited to Opposer(s) pleaded marks ........................................ 10-11

Point 4 - Opposition to: my word mark "HERE COMES THE JUDGE" ........................................ 11-12

Point 5 - Opposition to: my word mark "ALL RISE" ........................................ 13-14

Point 6 – Opposition to: my design mark ........................................ 14-15

Point 7 - Ownership & Adoption of Pleaded Marks

A. Failure of ownership & adoption by Judge ........................................ 16-18
B. MLBPA License Agreements & failure to adopt trademarks ........................................ 18-22
C. Trial Declarations of MLBPA and the Licensees ........................................ 22-23
D. Joint action of Aaron Judge and Patricia Judge substantiate unalterable doubt as to ownership of the pleaded marks ........................................ 23-24

Point 8 – Opposers Trial Declarations ~ re: pleaded marks used as commercial source indicators ........................................ 25-28

Point 9 - Distinctiveness of Opposers word marks "ALL RISE" and "HERE COMES THE JUDGE" ........................................ 28-34

## Table of Contents (continued)

Point 10 - Distinctiveness of word mark "JUDGE" ........................................ 34-36

Point 11 – Distinctiveness re: nickname of "All Rise" for Judge .................... 36-37

Point 12 - Failure to function of Opposers pleaded marks ............................... 37-38

Point 13 - The Secondary Source Trademark Concept
A. TTAB's conclusion as to commercial source indicators......................... 38-40
B. Failure by Opposers to argue that its supposed trademarks point to Aaron Judge as their secondary source............................................. 40-41
C. Trial stage and the secondary source concept .............................................41
D. Opposers Trial Brief ....................................................................... 41-43
E. My TTAB Brief .............................................................................................43
F. Opposers Reply Trial Brief.................................................................... 43-45
G. Concept of secondary source trademark has been waived...................... 45-47
H. TTAB ruling that Judge Marks are secondary source trademarks.......... 47-58
I. Opposers Reply Brief re: secondary source cases.................................. 58-60
J. The record and prior use of the pleaded marks for other goods (not the applied-for goods) .................................................................. 60-64

Point 14 – Waiver ........................................................................................ 64-65

Point 15 - Conclusion ..........................................................................................65

## <u>Nature of Confidential Information being Redacted</u>

Pursuant to Federal Circuit Rule 25.1(e)(1)(B), the materials omitted on pp. 19-21 (consisting of 465-words); p. 25 (consisting of 12-words); p. 63 (consisting of 65-words) and on p. 64 (consisting of 19-words) pertain to Appellees' TTAB declarations and MLBPA license agreement references that were classified as "**Confidential – For Attorneys' Eyes Only (Trade Secret / Commercially Sensitive**)" and, more particularly, concern trademark rights, product approvals and related sales data information and various Appellant arguments related thereto.

## Introduction

Appellant challenges TTAB's ruling of trademark priority issued April 12, 2023 in favor of Opposers under Trademark Act Section 2(d) thereby refusing my registration for the standard character marks of ALL RISE and HERE COMES THE JUDGE and a design mark featuring a standard baseball diamond with a scales of justice and gavel superimposed on it (see opinion pp. 9 and 61).

Appellant did not appeal from TTAB's finding of Section 2(d) likelihood of confusion.

Appellees did not cross-appeal and thus are bound by TTAB's likelihood of confusion determination such that, if this court should reverse TTAB's priority ruling, Opposers can never withdraw, recant or disavow its legal position that a likelihood of confusion exists between the IC 25 goods of applicant and Opposers.

In writing this brief, I underlined certain words from quotes taken from cases, Notices of Oppositions, Trial Declarations and TTAB briefs.

## Review by this Court

In *In re North Carolina Lottery,* 866 F.3d 1363, 1366 (2017):

> **This court reviews the TTAB's conclusions of law de novo and findings of fact for substantial evidence…Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."**

## Relevant Facts

Charles Hoffmann, Esq (Hoffmann), as my lawyer, filed three (3) intent to use applications (ITU) with the USPTO under § 1(b)(2). Oppositions were filed as stated below by Major League Baseball Players Association (MLBPA) and Aaron Judge (Judge). Please refer to TTAB Opinion dated April 12, 2023 on p. 2 footnotes 1-4.

### My word mark: "HERE COMES THE JUDGE"

- ITU filed July 14, 2017; Serial No. 91240180 assigned.
- MLBPA alone filed Notice of Opposition (NOO) on March 21, 2018 [Opposition No. 91240180 - 1 TTABVUE (parent)].

### My word mark "ALL RISE"

- ITU filed July 14, 2017; Serial No. 87528414 assigned.
- MLBPA alone filed NOO on July 23, 2018 (No. 91242556 -1 TTABVUE).

### My design mark

- ITU filed on October 12, 2017; Serial No. 87643089 assigned (see TTAB decision p. 2 for depiction).
- Both MLBPA and Aaron Judge filed NOO on August 27, 2018 (No. 91243244 - 1 TTABVUE).

Each of my three (3) marks as stated in Opinion p. 2 was:

> **…for "clothing, namely, t-shirts, shirts, shorts, pants, sweatshirts, sweatpants, jackets, jerseys, athletic uniforms, and caps" in International Class 25.**

# <u>Argument</u>

## <u>Point 1</u>

## <u>Trademark Act Section 2(d)</u>

At p. 32 in my TTAB brief [(103 and 104 (confidential) TTABVUE)]:

> **8. The Otto Roth Rule: To prevail under §2(d) Opposers must prove priority rights superior to Applicant**
>
> **In *Otto Roth & Co., Inc. v. Universal Foods Corp.,* 640 F.2d 1317, 209 USPQ 40 (CCPA 1981)…**
>
> **One who opposes registration to an applicant under section 2(d)…must prove he has proprietary rights in the term he relies upon to demonstrate likelihood of confusion as to source, whether by ownership of a registration, prior use of a technical "trademark," prior use in advertising, prior use as a trade name, or whatever other type of use may have developed a trade identity. (640 F.2d at 1320)**
>
> **….**
>
> **Under section 2(d), as utilized in an opposition, confusion… is not recognized where one claiming to be aggrieved by that confusion does not have a right superior to his opponent's, or where he has not proved that that which he claims identifies him as the source of goods or services actually does so. (*Id.* at 1322)**
>
> **In *Herbko International, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162…(Fed. Cir. 2002), (per) *Otto Roth*…:**
>
>> **These proprietary rights may arise from a prior registration, prior trademark or service mark use, prior use as a trade name, prior use analogous to trademark or service mark use, or any other use sufficient to establish proprietary rights.**

TTAB acknowledged "the concept of use analogous to trademark use was not pleaded, tried or briefed" and "is inapplicable to this case." (p. 19 FN 58). What is necessary to establish priority? It is that which must be pled by Opposers in each Notice of Opposition, tried during the trial stage and then argued in its trial brief.

According to TBMP § 309.03(c)(2) and case law, in challenging each of my three marks, Opposers must separately plead in each NOO, present evidentiary proof during the trial stage and argue its points in its trial brief as follows:

- which specific word mark is claimed as priority as having been used on Class 025 goods;
- that the specific word mark was actually intended to be and was actually adopted as a trademark for Class 025 goods;
- that the specific adopted word mark is distinctive in the trademark sense;
- that each such pleaded, adopted and distinctive mark was actually functioning as a trademark on the goods in question prior to my ITU filings; and
- that each such mark either uniquely pointed to a single commercial source of origin for the goods in question or is otherwise specifically claimed as secondary source trademark and proven to act as such.

It is critical on my appeal to first show what must be included in a notice of opposition, what Opposers did plead and what they did not plead against my three applications. Then I will discuss what was tried during trial stage and then argued in Opposers trial brief as well as arguments improperly advanced for the first time in Opposers reply brief.

In "McCarthy on Trademarks and Unfair Competition" (McCarthy), see **§ 20:24. Pleading and proof—Proof is limited to issues raised in notice of opposition and in application (5th ed. June 2021 update)**:

> ***Opposer is Limited to the Allegations of the Opposition.*** **The opposer is bound by the grounds pleaded in its notice of opposition. Neither the TTAB nor the courts will consider grounds not raised in the notice of opposition.[1]… In an opposition proceeding, as in any litigation, the parties are limited in their proof by the legal grounds raised and facts alleged in the pleadings. The purpose of pleading is to apprise a party by fair notice of the case it has to meet. A party in the position of plaintiff must plead "more than just labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[3]**

Opposers are limited to that which was raised as objections in each respective NOO and the "facts" which supposedly justify their claims. Opposers must raise their objections in a clear, material and sufficient manner to substantiate claim that they are entitled to priority over my ITU applications. One cannot merely make a statement in the NOO without providing essential points to support its opposition. McCarthy writes that "facts" must be stated in the NOO. Then they are required to

present proof during the trial stage of "the legal grounds raised and facts alleged" in the Notice of Opposition. Further, in order for TTAB to consider the points they claimed (legal grounds raised and facts alleged) in their notice of opposition and, if so claimed, then tried during the trial stage, Opposers must incorporate its facts and legal arguments in its trial brief. At all stages, you cannot merely use "labels and conclusions" but must specifically show facts and make legal arguments to justify your contentions.

What does § 2(d) require, what did the Opposers claim in their NOO documents and what didn't they claim?

**Point 2**

**Opposers must establish proprietary rights in a pleaded common law mark**

In TBMP § 309.03(c)(2):

> **A. Priority**
> **A plaintiff must plead (and later prove) priority of use. [Note 1.] In order to properly assert priority, a plaintiff must allege facts showing proprietary rights in its pleaded mark that are prior to defendant's rights in the challenged mark.**

TBMP § 309.03(c)(2) makes its crystal clear Opposers must state exactly without equivocation or any murkiness what marks they claim as trademarks previously used in commerce.

TTAB in my case on p. 18 wrote:

> **In order to prevail on their claims under Section 2(d), Opposers must prove both priority of use of their pleaded**

> **marks and a likelihood of confusion between those marks and those Applicant has applied to register**.

In my case, Opposers have to have pled (and ultimately prove) the actual mark(s) that supposedly gave Mr. Judge priority over each of my three ITU filings. There can be no guesswork involved or expansive claim of "Judge Marks" as being their cover for claim of priority. Each individual mark identified as such must pass all the tests to be considered as a trademark in commerce prior to the filing date of my respective ITU filings.

## Point 3

### Each Opposition limited to Opposer(s) pleaded marks

Opposers purposely crafted an argument – which TTAB wrongly accepted – that the so-called "Judge Marks" are the marks to be considered in opposition to my ITU applications.

My position is that an opposer is limited to the actual marks set forth in each respective ESTTA and Notice of Opposition.

What Opposers actually wrote in each NOO is critical. TTAB's consolidation decision dated February 1, 2019 (my TTAB brief pp. 28-29) stated each of the three proceedings must be decided on its own merits and its own facts of record.

Should not this mean what it plainly states? Each case stands or falls on its own merits. There is no buttressing of what one proceeding might provide to assist the other.

Also, TTAB ESTTA cover sheet (see my brief p. 29) should not be overlooked. It is my understanding that each ESTTA filed with each respective NOO must be read together to ascertain exactly what Opposers are claiming and critically what each failed to state. This then has to be examined against what they were supposed to prove at trial and what they did or did not argue in their TTAB trial brief.

TTAB at pp. 29-30 downplays ESTTA's significance. What TTAB did not state – after citing TBMP § 309.02 - is what the Board ruled in *Norris v. Pave Promoting Awareness, Victim Empowerment*, 2019 WL 4785638, FN 2 (2019):

> **…the content of the ESTTA cover sheet is read in conjunction with an attached notice of opposition as an integral component thereof…**

Thus, ESTTA is not a mere NOO attachment but central to that which a party claims as its grounds in opposition. Therefore, the statements in each ESTTA are as binding on each Opposer as is the contents of the respective NOO inclusive critically of the asserted "Mark Cited by Opposer as Basis for Opposition" (see each ESTTA p. 2).

**Point 4**

**Opposition to: my word mark "HERE COMES THE JUDGE"**

In my TTAB brief, p. 30 summarizes the MLBPA NOO and its ESTTA to my word mark HERE COMES THE JUDGE.

In Opposer MLBPA's NOO:

par. 7

> **The mark JUDGE, alone and with other terms (collectively, the "Judge Marks"), has been used as a trademark throughout the United States in connection with various goods and services, including apparel.**

par. 10

> **The Judge Marks have been used as trademarks on and in connection with the goods of Opposer's licensees, including apparel products, throughout the United States.**

par. 12

> **As a result of the use of the Judge Marks by Judge and Opposer, the purchasing public associates the Judge Marks, and the goods and services provided in connection with those marks, with Judge. The Judge Marks are distinctive and have become widely recognized by the consuming public as a designation of the source of Judge's goods and services and of Judge.**

Therefore, only the word mark JUDGE is cited in opposition alone and collectively with other unstated so-called "Judge Marks" which are not itemized.

The word marks ALL RISE and HERE COMES THE JUDGE are specifically not raised in opposition. Mark JUDGE is claimed as the commercial source of origin for "Judge's goods and services."

**<u>Point 5</u>**

**<u>Opposition to: my word mark "ALL RISE"</u>**

My trial brief at pp. 30-31 summarizes the MLBPA NOO and its ESTTA to my word mark ALL RISE.

In Opposer MLBPA's NOO:

par. 5

> **The mark ALL RISE, alone and with other terms (collectively, the "Judge Marks"), <u>has been used as a trademark</u> throughout the United States in connection with various goods and services, including apparel.**

par. 9

> **The Judge Marks have been used as trademarks on and in connection with the goods of Opposer's licensees, including apparel products, throughout the United States.**

par. 11

> **As a result of the use of the Judge Marks by Judge and Opposer, the purchasing public associates the Judge Marks, and the goods and services provided in connection with those marks, with Judge. The Judge Marks are distinctive and have become widely recognized by the consuming public <u>as a designation of the source of Judge's goods and services</u> and of Judge.**

Therefore, only the word mark ALL RISE is cited in opposition alone and collectively with other unstated so-called "Judge Marks" which are not itemized.

The word marks HERE COMES THE JUDGE and JUDGE are specifically not raised in opposition. ALL RISE is claimed as the commercial source of origin for "Judge's goods and services."

**Point 6**

**Opposition to: my design mark**

My trial brief at pp. 31-32 summarizes the NOO and the ESTTA to my design mark. The word marks JUDGE, ALL RISE and HERE COMES THE JUDGE are the basis for opposition.

In Opposers MLBPA and Mr. Judge's NOO:

par. 6

> **Opposers have used and/or licensed judicial terminology, including, but not limited to, Judge's surname, JUDGE, HERE COMES THE JUDGE and ALL RISE, and judicial symbols, including gavels, alone and with other terms and designs (collectively, the "Judge Marks"), as trademarks throughout the United States in connection with various goods and services, including apparel.**

par. 9

> **The Judge Marks have been used as trademarks on and in connection with the Opposers' goods and services and/or the goods and services of Opposers' licensees, including apparel products, throughout the United States.**

par. 11

> **As a result of the use of the Judge Marks by Opposers, the purchasing public associates the Judge Marks, and the goods and services provided in connection with those marks, with Judge. The**

> **Judge Marks are distinctive and have become widely recognized by the consuming public <u>as a designation of the source of Judge's goods</u> <u>and services</u> and of Judge.**

Clearly, as to my design mark only, Opposers have elected to specifically delineate JUDGE, HERE COMES THE JUDGE and ALL RISE in opposition and as the commercial source of origin for "Judge's goods and services."

There can be no guesswork. If not raised as a specific opposing mark, then that which was not raised is waived. Each opposition stands on its own merits. It cannot be buttressed with claims, facts, findings and rulings from the other two proceedings.

I totally understand what TTAB opinion states at pp. 30-32 about the Notice of Opposition to be fairly read. But TTAB cannot unfairly read into it that which was not stated. If you don't plead it and you don't provide the required facts, not even TTAB should be permitted to argue and conclude otherwise. In simple terms, the mark(s) claimed in each of the three (3) proceedings must be specifically identified when combining the ESTTA with the NOO. Sufficient material facts must also be stated to back up the claim of priority. To rule otherwise would be grossly unfair and open the door to an opposer making claim that the pleadings are not the boundaries for its claimed marks used by it as trademarks in commerce and the underlying facts to justify its claims in order to allege and prove Section 2(d) priority over my respective ITU filings.

**<u>Point 7</u>**

## <u>Ownership & Adoption of Pleaded Marks</u>

### A. <u>Failure of ownership & adoption by Judge</u>

*Executive Coach Builders, Inc. v. SPV Coach Company, Inc.*, 123 USPQ2d 1175 (TTAB 2016) states:

> **…because unregistered marks are not entitled to the presumptions established under…Section 7(b)-(c), <u>it is Opposer's burden to demonstrate that it owns a trademark</u> that was used prior to Applicant's first use or constructive use of its mark and not abandoned…**

There are substantial questions about Mr. Judge's ownership of any of the marks claimed in opposition to my filings.

Mr. Judge never claimed ownership of, nor did he ever adopt, any of the pleaded marks as trademarks.

What does ownership mean? I could find no definition in Lanham Act.

At pp. 32-33 Hoffmann wrote:

> **In Opposers' Trial Brief at p. 24, it is acknowledged that the rights, if any, of Opposer MLBPA, flow from the claimed proprietary rights of Judge. Therefore, each respective opposition must be solely adjudged as to Judge's claim of having proprietary rights in the unregistered terms JUDGE, HERE COMES THE JUDGE and ALL RISE... For a mark to be recognized under common law as a trademark, there must be adoption by the claimant and first use in commerce of a distinctive designation having such source identifying functions to clearly differentiate the owner or producer of the applicable goods. *See In re Swift & Co.,* 223 F.2d 950, 953...Applicant asserts that both adoption and use of the relevant alleged**

> **common law marks in each respective *NOO* must be alleged and proven with testimonial evidence by the Opposers as elements of establishing priority. In *Hydro-Dynamics, Inc., v. George Putnam Co.*, 811 F.2d 1470 (Fed. Cir. 1987), the court stated (at p. 1473):**
>
> > **The requirements of both adoption and use devolve from the common law;…"Adoption" is a threshold condition to the establishment of trademark rights. *See Kohler Mfg. v. Beeshore,* 59 F. 572, 576 (3d Cir.1893) (one must intend "to adopt [the mark] as a trademark")…Whether a trademark has been "adopted" is a factual finding whose resolution may include elements of subjective intent…intent is illuminated by the surrounding circumstances and objective evidence.**

Reviewing each NOO, as solely applicable to each ITU application, nothing is plead as to adoption of the pleaded mark in opposition.

Adoption and use are two differing concepts both being among the required elements to establish priority. TTAB did not discuss adoption as a factor in determining if there was usage (see pp. 36-38 "**Use as Trademarks**") and § 2(d) priority.

There must first be adoption of the claimed priority marks as intended trademarks by the Opposer before you decide if there was a distinctive mark and then if there was proper trademark usage to designate a commercial source of origin.

TTAB doesn't cite the *Hydro-Dynamics case*.

I ask the Court to look at all the "**surrounding circumstances and objective evidence"** in order to determine whether or not Mr. Judge adopted the pleaded marks

in each Opposition as trademarks which bears upon his supposed ownership required to establish priority rights.

In each NOO, the words “owner,” “ownership,” “adoption” and/or “appropriation” are never used. TTAB at p. 31 apparently referring to the “Opposers’ pleadings” (par. 7 of the NOO) stated:

> **As Opposers correctly observe, the notice of opposition to HERE COMES THE JUDGE claimed ownership of the “Judge Marks,” defined as “JUDGE, alone and with other terms.”[79]**

FN 79 is reference to the HERE COMES THE JUDGE NOO par. 7 which I quoted on p. 12 of this brief.

The TTAB statement is inaccurate. The term “Judge Marks” is used in NOO par. 7 but at no point does Mr. Judge claim “ownership.”

Further, the opening clause is also incorrect making it seem as if the Opposers had made such a claim of ownership when, in fact, they never did in any of the pleadings.

**B. <u>MLBPA License Agreements & failure to adopt trademarks</u>**

I am at a distinct disadvantage as I have been denied my right to have a complete copy of each such agreement [see TTAB decision 7/23/24 and this Court’s Order dated 9/13/24 (document 28)].

I reiterate Hoffmann’s trial brief arguments from pp. 26-28 and pp. 34-35.

There were five situations where MLBPA on behalf of Judge would – if there was true intent to adopt as trademarks any or all of the pleaded marks now used in opposition – have been duly expected to declare those marks to be trademarks to then be used as such in commerce to establish trademark rights.

[1] [redacted]

> [redacted]

[redacted]

[redacted]

> [redacted]

[1] ***Redaction Legend**: Confidential information - Content: MLBPA license agreement information and Appellant arguments related thereto.*

[2] [redacted]

[2] ***Redaction Legend**: Confidential information - Content: MLBPA license agreement information and Appellant arguments related thereto.*

[3] [redacted]

[redacted]

Third – as stated by Hoffmann at pp. 27-28, if MLBPA truly believed the terms ALL RISE and HERE COMES THE JUDGE were being used as trademarks, then why did this highly sophisticated entity with the best lawyers in the U.S. not file trademark applications? Its duty was to protect the IP rights of its members.

Fourth – the very first time the "Judge Marks" were referred to by MLBPA or Mr. Judge as being trademarks was in each respective NOO. It was after I filed my ITU applications. That cannot be denied. That was followed by various copycat licensee declarations with their chimed and mimicked trademark pronouncements.

---

[3] ***Redaction Legend**: Confidential information - Content: MLBPA license agreement information and Appellant arguments related thereto.*

Indeed, any licensee claiming trademark declaration failed to refer back to their respective licensee agreements where no such reference was made.

Fifth – there was no claimed use of the ™ or ® symbols of trademark significance on any IC 25 apparel depicted in the record and sold prior to my ITU filings.

Therefore, claimed use of the “Judge Marks” by the licensees as benefiting the trademark owner (TTAB p. 15) and ownership rights in a trademark as capable of being acquired solely through the mark’s use by a so-called controlled license (MLBPA brief p. 25) are mere conclusions without reference to the specific facts of these proceedings which control. The mark must be distinctive and so function to indicate source of origin. Mere license use is totally insufficient. The mark(s) must be alleged, then proven to actually have been adopted by the trademark owner and then proper use must be shown in a trademark sense which can be by license use.

Without due and requisite proof of adoption, which there was not by Mr. Judge in my case, ownership has not been proven and, as such, the oppositions must be dismissed. McCarthy § 20:15, Note 4 (*Syndicate* case) [(5th ed, Dec. 2021 update]; *Stephen Slesinger, Inc. v. Disney Enters., Inc.*, 702 F.3d 640 (Fed. Cir. 2012); TMEP §309.03(c)(2) note 2.

**C. Trial Declarations of MLBPA and the Licensees**

Obviously, MLBPA attorneys prepared the declarations for each given the monotonous repetition of the same lockstep phraseology.

Strikingly, none of those who signed declarations gave any testimony as to when and under what circumstances the licensee was first informed that any of the pleaded marks in opposition to my ITU filings had been claimed as trademarks of Mr. Judge and had to be used in a trademark manner on the IC 25 goods to be produced by that licensee. All declarations are silent as to this critical point. Are we to believe that these licensees took it upon themselves to unilaterally declare each of the three pleaded marks were trademarks and each licensee was in charge of making certain each usage was in a trademark manner? That would be ludicrous.

### D. Joint action of Aaron Judge and Patricia Judge substantiate unalterable doubt as to ownership of the pleaded marks

Please refer to my TTAB brief at pp. 35-38. TTAB on p. 15 FN 5 refused to consider the point made as critically bearing upon Mr. Judge's lack of ownership of the pleaded marks. The actions of Mr. Judge in consenting to his mother filing ITU applications for IC 25 apparel identical to my applications both for HERE COMES THE JUDGE on February 17, 2018 and for ALL RISE on May 9, 2019 lays bare that he admitted he had no common law rights to either such word mark. It doesn't matter that Mrs. Judge's applications were suspended because of my prior filings.

Each of Patricia Judge's applications included the required TMEP § 2.33 verified statement (see TTAB brief p. 37).

Obviously, the attorneys for Aaron Judge were in lock step and coordinated with Mrs. Judge's attorneys and all were aware of these pending proceedings.

Therefore, this Court is entitled (as was TTAB but did not) to make the presumption that Aaron Judge had full knowledge of and had no objection to his mother stating under penalty of perjury:

> **…that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce,…**

Opposers can spin this and TTAB can claim it is "to be resolved between the Judges…" (p. 16 FN 55) but the unalterable fact is crystal clear: Aaron Judge – by giving the consent to his mother and being charged with knowledge (as he was obviously represented by counsel as was his mother) of the requirements for his mother to file the TMEP § 2.33 sworn statement – knowingly consented to his mother making the statement that to her knowledge "…no other person has the right to use the mark in commerce…" Judge has thus admitted that he did not use nor did he have the right to use the word marks ALL RISE and HERE COMES THE JUDGE in commerce.

This is an admission against his interest and negatively bears upon his claims of priority in opposition to my ITU filings as to the same two word marks.

Thus, having in essence admitted he had no claim to use either ALL RISE and/or HERE COMES THE JUDGE in commerce, Aaron Judge has no ownership proprietary rights and all oppositions must be dismissed.

**Point 8**

**Opposers Trial Declarations**
**re: pleaded marks used as commercial source indicators**

At trial stage, Opposers submitted following declarations from MLBPA licensees. If referenced, I will refer to claimed "trademark" use of the pleaded marks ALL RISE and HERE COMES THE JUDGE on IC 25 apparel and other goods. By citing these references, I do not concede proper trademark usage.

David Heimburg - New Era Cap - 62 and 63 (confidential) TTABVUE
(for T-shirts)

- No reference to any claimed "trademark" usage.

Jamie Mottram - BreakingT – 54 (confidential) and 55 TTABVUE

- par. 14 – July 5, 2017 apparel sold under trademark ALL RISE.
- par. 15 – "…trademark ALL RISE is used as a brand name to identify the apparel."

Laurence Raff - Outerstuff - 74 and 75 (confidential) TTABVUE

- No reference to any "trademark" usage.

Eric Ross - 108 Stitches - 50 and 51 (confidential) TTABVUE

- No reference to any claimed "trademark" usage.

Brian Rutt - The Emblem Source - 66 and 67 (confidential) TTABVUE

- [4] [redacted]

[4] ***Redaction Legend**: Confidential Information – Content: licensee product sales.*

- par. 15 – "SKU number 84505 is sold under the trademark ALL RISE." "…trademark ALL RISE is used as a brand name to identify the product…"

Tim Shanahan - New Era Cap - 64 and 65 (confidential) TTABVUE
(hats)

- par. 18 - June 29, 2017 selling hats under trademark ALL RISE.

- par. 19 - "…trademark ALL RISE is used as a brand name to identify the baseball caps."
- par. 21 - June 2017 selling caps under the trademark ALL RISE. "…the trademark ALL RISE was used as a brand name to identify the baseball caps."

TK Stohlman - Fan Print - 58 and 59 (confidential) TTABVUE

- par. 12 – June 5, 2017 apparel sales using trademark ALL RISE.

- pars. 15 and 18 – June 2017 apparel sales using trademark ALL RISE.

- par. 19 – "…trademark ALL RISE is used as a brand name to identify the apparel at the point of sale of the apparel to the public.

Selim Tobey - Coed Sportswear - 56 and 57 (confidential) TTABVUE

- par. 13 - July 2017 apparel sales under trademark ALL RISE.

- par. 14 - "… the trademark ALL RISE was used as a brand name to identify the apparel."

- par. 17 - July 2017 apparel sales under trademark HERE COMES THE JUDGE.

- par. 18 - "…trademark HERE COMES THE JUDGE was used as a brand name to identify the apparel.

<u>Brett Williamson - Bored in Class - 48 and 49 (confidential) TTABVUE</u>

- par. 32 - November 2017 selling apparel under trademark ALL RISE.
- par. 33 – "…trademark ALL RISE is used <u>as a brand name to identify the apparel</u>."

<u>Rick Boelter - Boelter Brands - 52 and 53 (confidential) TTABVUE</u>

- re: Non-IC 25 apparel
- par. 13 – sold drinkware products as of August 2017.
- However, no reference to "trademark" usage.

<u>Matthew Katz - Team Beans - 60 and 61 (confidential) TTABVUE</u>

- re: Non-IC 25 apparel
- par. 13 - September 2017 selling bobbleheads under the trademark ALL RISE."
- par. 14 - "…trademark ALL RISE is used <u>as a brand name to identify the bobblehead.</u>"

<u>Evan Kaplan – MLBPA - 68 and 69 (confidential) TTABVUE</u>

- par. 35 – only reference to a "trademark" i19
- stated as follows:

> **…the trademark ALL RISE was used <u>as a brand name to identify the products</u>.**

-----------------------------------

Therefore, there could be no justifiable doubt that at trial stage Opposers claimed – in some but not all declarations – there was "trademark" usage of certain pleaded marks "to identify" the commercial source of IC 25 goods.

The mark "JUDGE" is not claimed in any declaration as a trademark of Judge.

**Point 9**

**Distinctiveness of Opposers word marks "ALL RISE" and "HERE COMES THE JUDGE"**

Please refer to my TTAB brief pp. 39-40. This court:

> **In *Towers v. Advent Software, Inc.,* 913 F. 2d 942 (1990)…it was held that under § *2(d)* an Opposer basing priority on:**
>
> > **[H]is own unregistered term cannot prevail unless he shows that his term is distinctive of his goods, whether inherently or through the acquisition of secondary meaning…**

Hoffmann wrote that:

> **In *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 10–11, (2d Cir. 1976), inherently distinctive marks comprise those considered as arbitrary, fanciful or suggestive. Thus, it is Opposers' burden of proof in order to prevail in a § *2(d)* based opposition to show sufficient proof that the relied upon common law marks are distinctive of the relevant goods.**

In each NOO (see this brief at pp. 11-15), the grand conclusion, without any facts pleaded in support, is made that NOT the pleaded mark but the cumulative "Judge Marks" are "distinctive." The word "arbitrary" was never used in any NOO.

TTAB discussed "Distinctiveness" in merely one page length (at pp. 32-33) claiming:

> **Here, as Applicant admits, Opposers' Notices of Opposition claim that their marks are distinctive.**[85]

citing to p. 48 of my brief. However, no such statement was made on p. 48. At pp. 30-31, the particular paragraph in each NOO making that unsupported conclusion is cited. That form of pleading by the Opposers without any supportive facts violates TBMP § 309.03(c)(2) and the law as stated in McCarthy § 20:24 with claim of distinctiveness having been waived.

In Opposers declarations, inclusive of MLBPA's Kaplan, no discussion is offered as to the concept of distinctiveness of any of the so-called "Judge Marks." The burden of proof has not been met.

Hoffman wrote on p. 40 as to Opposers trial brief:

> **Inclusive of the "Preliminary Statement" starting on p. 8 through p. 26, neither the word "distinctiveness" nor the words "inherent distinctiveness" are ever used. There has been a total failure to argue the concept of distinctiveness of Opposers' claimed marks as to the § *2(d)* priority opposition.**

On p. 49 of Opposers brief, there is reference to dilution claim. As part of that claim which is not § 2(d), it is written:

> **Dilution by blurring is also likely because the Judge Marks are inherently distinctive…The Judge Marks are arbitrary or suggestive of, without describing, an attribute of the goods being provided under the mark.**

Hoffmann on p. 40 wrote:

> **Opposers' do not delineate in their Trial Brief or present any discussion of law as to the whether the alleged "Judge Marks" are either arbitrary or suggestive on the scale of distinctiveness. Mere conclusions in a brief without any claimed support should not be considered. It is further noted that no claim was made that any of the alleged Judge Marks have acquired distinctiveness; therefore, such claims, if any, have been waived.**

On p. 12 of Opposers Reply brief - for the first time - argument is advanced that the word marks ALL RISE and HERE COMES THE JUDGE are "inherently distinctive:"

> **As argued in Opposers' Brief, there can be no question that the Judge Marks are inherently distinctive because they are "arbitrary or suggestive of, without describing, an attribute of the goods being provided under the mark."…The terms ALL RISE and HERE COMES THE JUDGE do not describe any good with which the Judge Marks have been used… *See, e.g.*, 96 TTABVUE 18 (ALL RISE and HERE COMES THE JUDGE marks used on goods they do not describe such as t-shirts, caps, patches).[5]**

As I have shown, no such claim was made by Opposers either in any NOO, in trial declarations, and/or in its trial brief regardless of the deceptive language of p. 12. As to first sentence quoted, that is by no means an explanation of how those marks are inherently distinctive as applied to the IC 25 goods. What was each mark…arbitrary or suggestive? Didn't Opposers have to expound on that in their trial brief. Can it merely be assumed? It's too late in a reply brief to offer any

explanation that should have been advanced in their trial brief. Opposers waived the Section 2(d) predicate of arguing and proving distinctiveness.

For the second sentence – the claim that the slogans "do not describe" "t-shirts, caps, patches" is not the only condition for determination if a mark is arbitrary. Conveniently and purposely left out of discussion is the mandate that the mark cannot describe or suggest a characteristic or attribute of the goods in question.

Opposers on p. 12 also state:

> **Moreover, by seeking registration of the identical ALL RISE and HERE COMES THE JUDGE marks on the Principal Register, Applicant concedes this issue.**

TTAB erroneously accepted that faulty argument as I will show.

Totally disregarding Opposers above failures and accepting the argument made in Opposers Reply brief (p. 12), TTAB rules on pp. 32-33 as follows:

> **Moreover, ALL RISE and HERE COMES THE JUDGE do not describe the apparel on which they appear, such as t-shirts, jerseys, and caps, and are thus inherently distinctive. *See Nautilus Grp., Inc. v. ICON Health & Fitness Inc.*, 372 F.3d 1330, 71 USPQ2d 1173, 1180 (Fed. Cir. 2004) (An arbitrary mark is "a known word used in an unexpected or uncommon way."). Applicant tacitly admits as much by seeking his own registrations on the Principal Register without a claim of acquired distinctiveness.**

In TMEP § 1209.01(a):

> **Arbitrary marks comprise words that are in common linguistic use but, when used to identify particular goods or services, do not suggest or describe a significant ingredient, quality, or characteristic of the goods or services…**

McCarthy § 11:11 states:

> ***An "Arbitrary" Word Mark Neither Describes Nor Suggests Something About the Goods or Services.*** **Arbitrary word marks are words in common linguistic use but which, <u>when used with the goods or services in issue</u>, neither suggest nor describe any ingredient, quality or characteristic of those goods or services.**

*In re Paramount Pictures Corporation*, 213 USPQ 1111 at *2 (1982), TTAB said:

> **An arbitrary design…has obvious source-indicating characteristics, just as do arbitrary terms…because they usually have no other perceived significance…**

The term "characteristics" is generally a feature or quality belonging typically to a person, place or thing and serving to identify it.

In *Paleteria La Michoacana Inc v. Productos Lacteos Tocumbo* 743 F. App'x 457, 128 USPQ2d 1172 (D.C. Cir. 2018), the Court said

> **Similarly, "arbitrary" marks-which have "no intrinsic connection" to the product they describe…**
>
> **The distinctiveness of a mark is <u>typically determined only in relation to a given product</u>, <u>with the mark's categorization dependent on the nature of that relationship</u>….**

The word "intrinsic" means generally not dependent on external circumstances and concerns the essential nature of the item involved.

What did the Opposers mean by the use of these word marks and slogans which bears upon how the slogans were intended to be used on the goods in question.

In the Kaplan declaration (par. 19), claim is made that "Products featuring Mr. Judge typically include judicial indicia…including ALL RISE, HERE COMES THE JUDGE…, among others, as plays on his surname Judge."

Further, as to ALL RISE mark (see NOO to my ALL RISE word mark par. 6) claim is that it is Judge's nickname.

Therefore, it cannot logically be claimed that the two word mark slogans have nothing what so ever to do with the apparel on which they appeared as the avowed intent of Opposer is to mark that apparel with those word mark slogans to induce purchase of baseball themed IC 25 goods featuring Judge as a ballplayer. It is ludicrous to claim that prospective purchasers of such goods actually buy the goods solely due to judicial symbols or phrases ornamented thereon ignoring the baseball related aspects of the apparel design. I am not stating that the word marks as used function as trademarks but my point is neither word mark can be deemed "arbitrary" in nature as if merely "pulled out of the air" having absolutely no marketing relationship to the goods on which they were used. Neither mark was arbitrary and thus not inherently distinctive.

Further, concerning my filing of my word mark ITU applications and, as such, I supposedly concede that Opposers claimed use of the same two word marks means that both of us are using distinctive and arbitrary marks. This is simply not true. My applications as accepted by the USPTO pertained to the use of the two slogans as

word marks on apparel with no other words or designs being involved. Those word marks, as proposed to be used by me, were deemed by the Examiner to be commercial source indicators in IC 25. The Opposers specimens of record with the word marks on them do not function as trademarks as they do not indicate commercial source of origin nor are they secondary source trademarks for the reasons as later explained.

Lastly, TTAB failed to acknowledge that Opposers in their Reply brief (see p. 13) did essentially admit that the so-called "Judge Marks" *en masse* "lack inherent distinctiveness" and argue that:

> **…the record is replete with evidence to support the conclusion that the Judge Marks acquired secondary meaning.**

Obviously, a mark cannot be both inherently distinctive or one that has acquired secondary meaning. Further, as shown on p. 36 of this Brief, the concept of secondary meaning has been waived.

**Point 10**

**Distinctiveness of word mark "JUDGE"**

Beyond the pleading issue and failure to argue at trial stage that word mark JUDGE was used in the "trademark" sense on IC 25 goods, JUDGE lacks distinctiveness. My TTAB brief at p. 44:

> **Opposer MLBPA acknowledges the term JUDGE was selected as a designation because it is Judge's surname (*NOO,* '180, ¶ 5-7; Kaplan Decl., *supra*, ¶ 18; Trial Brief pp. 8, 9, 13,**

> **15, 17, 18, 19)…However, it is undeniable that there is absolutely nothing in the record to indicate that the word JUDGE, by its intrinsic nature, serves to identify the single commercial source or origin for IC 025 goods.**

TTAB ruled at p. 34:

> **On this record, "JUDGE" is not primarily merely a surname, and the phrase "HERE COMES THE JUDGE" remains inherently distinctive for the goods of interest.**

TTAB failed to abide by this Court's rule in *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374 (Fed. Cir. 2017):

> **A mark is primarily merely a surname if the surname "is the primary significance of the mark as a whole to the purchasing public."** (citing *In re Hutchinson Tech, Inc* 852 F.3d 555, 554 (1988).

TTAB in *In re Olin Corp,* 124 USPQ 2d 1327 (2017) citing to *Earnhardt* wrote:

> **A term is primarily merely a surname if, when viewed in relation to the goods or services for which registration is sought, its primary significance to the purchasing public is that of a surname**.

Within the context of "substantial evidence" rule, the "relevant evidence as a reasonable mind might accept…" would fairly view the specimens of record as depicting the mark JUDGE as being used to connote, highlight and promote the skills of ballplayer with surname Judge and not geared to promoting a judicial reference as that would serve no legitimate commercial interest.

Therefore, as used on the specimens of record, JUDGE is used as a surname. Thereby, there is no inherent distinctiveness. The oppositions must be dismissed.

Further, TTAB failed to consider or acknowledge that Opposers admitted the mark JUDGE is not inherently distinctive. In their Reply brief p. 12 FN 5:

> **Applicant's HERE COMES THE JUDGE application is opposed based on Mr. Judge's common law rights in the mark HERE COMES THE JUDGE, which is inherently distinctive, <u>and</u> <u>the mark Judge</u>, <u>which has acquired secondary meaning based on the overwhelming evidence</u> of <u>record of secondary meaning</u>.**

In response:

- in this brief at pp. 11-12, my HERE COMES THE JUDGE mark was opposed solely by word mark JUDGE.
- concept of "secondary meaning" was not pleaded and never referenced in Opposers trial brief and has been waived. [this Court: *La. Fish Fry Prods., Ltd.*, 797 F.3d 1332 (2015)]. Thus, the admission stands but there can be no reliance by Opposers to prove distinctiveness.

**<u>Point 11</u>**

**<u>Distinctiveness re: nickname of "All Rise" for Judge</u>**

Please see my TTAB Brief at pp. 45-47. TTAB ruled at pp 35-36 that All Rise is in trademark sense distinctive pointing to Judge.

TTAB improperly relied upon following as attempted justification for creation of that nickname:

> **Here, however, as the evidence shows, baseball fans and commentators began using "ALL RISE" as a play on Aaron Judge's last name early in his career. It does not matter whether it's technically a nickname or not. A plaintiff may have a protectable property right in any term the public has come to associate with the plaintiff's goods or services.**

TTAB fails to delineate what record "evidence" it bases such a conclusion. Reference to Opinion at pp. 5-9 and pp. 39-42 essentially reveals that TTAB is relying upon that which is considered as supporting a claim of "use analogous to trademark use." However, that is improper as "use analogous" priority is not involved in these proceedings (see this Brief p. 7). Thus, based on the record and the waiver of said concept, neither Opposers nor TTAB can argue or find that All Rise is Judge's nickname for purposes of priority.

Lastly, much was made in Opposers trial brief (see pp. 15, 35 and 40) about Judge deciding to use All Rise as his nickname because he placed it on back of his Yankees uniform. However, the record shows that he did so on "Players Weekend 2017" which took place August 25-27, 2017 subsequent to my word mark ITU filings.

**Point 12**

**Failure to function of Opposers pleaded marks**

Hoffmann briefed this at pp. 41-44 which I restate. Under the "substantial evidence rule," "a reasonable mind" looking at the specimens of record would be drawn to seeing Judge the ballplayer, as Hoffman wrote at p. 43, engulfed and

surrounded with baseball themed paraphernalia. The purchasing public interested in such goods seeing the common slogans ALL RISE and/or HERE COMES THE JUDGE or mark JUDGE hardly can be viewed, as result of focusing on those marks as variously depicted in numerous formats on IC 25 goods, as drawing the conclusion those are trademarks indicating a commercial source of the apparel (as pleaded in each NOO and as claimed in some trial declarations) or that of Judge (according to TTAB) as the endorser of the apparel being sold by the licensee.

The usage of the slogans and JUDGE are informational messaging as a marketing tool to sell apparel featuring Judge the ballplayer and, as such, are mere ornamentation without any source identifying function. In this manner, none of the pleaded marks are distinctive. Opposers have not proven priority.

Lastly, as stated on p. 40 by Hoffmann:

> **Opposers have not separately identified, according to each respective opposition proceeding, those specimens as being claimed to support the applicable § *2(d)* priority argument.**

**<u>Point 13</u>**

## <u>The Secondary Source Trademark Concept</u>

### A. <u>TTAB's conclusion as to commercial source indicators</u>

TTAB in effect agreed with Hoffmann's arguments and concluded the slogans ALL RISE and HERE COMES THE JUDGE and word mark JUDGE were <u>not</u> commercial source indicators of the involved IC 25 goods.

In TTAB opinion at pp. 45-48, TMEP § 1202.03(c) and McCarthy are referenced.

In lieu of quoting the TMEP reference by TTAB, I cite, in pertinent part, directly to TMEP § 1202.03(c) entitled "Secondary Source:"

> **To show that a proposed mark that is used on the goods in a decorative or ornamental manner also serves a source-indicating function, the applicant may submit evidence that the proposed mark would be recognized as a mark through its use with goods or services other than those being refused as ornamental. To show secondary source, the applicant may show: (1) ownership of a U.S. registration on the Principal Register of the same mark for other goods or services based on use in commerce…(2)…(3) non-ornamental use of the mark in commerce on other goods or services; or (4)...If the applicant establishes that the proposed mark serves as an identifier of secondary source, the matter is registrable on the Principal Register.**

McCarthy § 3:8 (5th ed. May 2024 update) entitled "**A trademark identifies a single source**" states in part:

> ***Identifying a Secondary Source.*** **Trademarks can serve to identify and distinguish a "secondary source" in the sense of indicating sponsorship or authorization.[4] The "secondary source" is the trademark owner and licensor who has permitted the use of its mark on certain goods or services…**

TTAB correctly notes that Hoffmann argued in my brief that which is quoted at p. 43. The slogans and the Aaron Judge name, his uniform #99, NY Yankees' references etc. point to the ballplayer – that is – as purely being ornamentation or informational messaging and, not to the slogans and Judge, being the commercial

source of the Class 025 goods. Hoffmann argued that the ALL RISE and HERE COMES THE JUDGE slogans as well as the mark JUDGE did not function as trademarks on the involved Class 25 goods.

After extensively using *University Book Store v. University of Wisconsin Bd. of Regents*, 33 USPQ2d 1385 (TTAB 1994), TTAB at p. 48 in support of its conclusion wrote:

> **Here, as in *University of Wisconsin*, these phrases and symbols on the licensed apparel function as trademarks pointing to Aaron Judge as their secondary source.**

**B. <u>Failure by Opposers to argue that its supposed trademarks point to Aaron Judge as their secondary source</u>**

I have shown that each respective NOO claims that, whatever marks are argued as being trademarks, it is <u>those</u> marks that are being legally relied upon:

> **as a designation of the source of Judge's goods and services and of Judge.**

(see each respective NOO as quoted above).

A simple word search of each NOO reveals that not once was there any claim offered in opposition raising the argument…the so-called JUDGE MARKS…were trademarks, not as to being the primary commercial source of origin for Class 025 goods, but being a secondary source trademark pointing to Aaron Judge.

The secondary source concept was not pleaded in opposition. It was thus waived for all purposes.

What case states that, if the secondary source trademark claim is not pleaded, or tried or argued, it can still be used by TTAB to make a finding that Opposers NOO can still be sustained based on the claimed word marks in opposition being declared by TTAB as secondary source trademarks? Neither TTAB nor Opposers (in their Reply brief) cited any such case.

**C. Trial stage and the secondary source concept**

There is absolutely not one instance in the declarations of MLBPA Executive Director Kaplan and/or in those from MLBPA's licensees referring to the slogans or the mark JUDGE as being secondary source trademarks. That claim – which was never pleaded in any of the three respective NOO pleadings - was further never mentioned during trial stage.

**D. Opposers Trial Brief**

Once again, a simple word search of its 54-page brief demonstrates that words "secondary source" were never used. Opposers are bound in each proceeding by their respective claims in each NOO. My authority for this is TBMP § 309.03(c)(2) and McCarthy § 20.17.

I am positive that McCarter & English did not by error fail to argue and refer to the concept of secondary source. They did not do so because that was not the Opposers argument. The so-called Judge Marks were claimed as the commercial source of the IC 25 goods. The reference to MLBPA license agreements purport to

show use in commerce as a condition of establishing priority. It is hoped this court will not accept any attempt by Opposers in their brief to now retroactively claim that, of course, secondary source trademarks were always in this case from the inception with Hoffmann apparently not understanding Opposers pleadings, declarations and arguments made in their trial brief.

Now that I see what cases TTAB relied upon to try and justify use of secondary source concept and what Opposers wrote in their reply brief, it is critically telling that in Opposers trial brief there was no reference to, or any discussion about, any of the following:

- TMEP § 1202.03(c)
- McCarthy § 3:8
- *In re: Larry Harmon Picture Corp.*
- *In re Lululemon Athletica Canada. Inc.*,
- *In re Olin Corp (1973 case)*
- *In re: Paramount Pictures Corporation*
- *In re Pro-Line Corp.*
- *Paddington & Co. v. Lead Co.*
- *Univ. Book Store v. Univ. of Wis. Bd. of Regents*

McCarter & English did not forget to discuss any of these references and cases in Opposers trial brief. None were discussed because secondary source trademark was not an issue in any of the three proceedings.

**E. <u>My TTAB Brief</u>**

Hoffmann never once used the words "secondary source" in my 55-page brief. He is a highly regarded patent and trademark lawyer with over 60-years of experience. I am sure, if "secondary source" trademark was being argued by Opposers, Hoffmann would have discussed its applicability to these proceedings.

None of the above cited cases <u>or</u> TMEP § 1202.03(c) was directly referenced by Hoffmann.

My TTAB brief at pp. 39-47 was totally geared to argue that JUDGE – ALL RISE – HERE COMES THE JUDGE were not distinctive and each failed to function as trademarks in and of themselves as not being the commercial source indicators of the IC 25 goods. No opposing argument was made by Hoffmann as to secondary source as no such claim was made by Opposers in their respective NOO, had been tried or presented in their trial brief.

**F. <u>Opposers Reply Trial Brief</u>**

Having read my applicant's TTAB trial brief with the points made pertaining to lack of distinctiveness and, in any event, a failure to function thereby concluding – as used – the ALL RISE and HERE COMES THE JUDGE slogans as well as word

mark JUDGE were not the commercial source of the IC 25 goods in question, a change in argument and tactics had to be made in an attempt to save the opposition to the three proceedings. How did Opposers try to do this?

First, by stating on pp. 9-10 in Opposers reply brief the following:

> **Opposers have submitted numerous examples of the Judge Marks functioning as trademarks, *i.e.*, source indicators, in connection with the sale of apparel, headwear, and other licensed goods…**

*Beyond any doubt, the above quote undeniably exposes Opposers argument that the Judge Marks were IC 25 commercial source indicators.*

Then, for the very first time in any of the three proceedings, following argument was advanced. At p. 10 of the Opposers Reply brief, a critical admission is made confirming exactly my position that – up until this point in the case, that is, in Opposers Reply brief – Opposers argument to defeat my ITU filings was solely based on claim that its marks were distinctive being commercial source indicators:

> **In addition to the above examples, the Judge Marks have been used in numerous apparel designs to indicate Mr. Judge as the secondary source of origin. Thus, even if the Judge Marks do not indicate the manufacturer of the apparel, they indicate that the apparel ultimately emanates from Mr. Judge**…

The language selected by McCarter & English is revealing.

The "**In addition to the above examples**" language obviously refers to specimens in the record supposedly substantiating commercial source of origin

indicators given the next sentence: "**Thus, even if the Judge Marks do not indicate the manufacturer of the apparel…**"

This further undeniably proves beyond any substantive doubt that – up until the Reply brief – Opposers had not pled / tried / or briefed secondary source trademarks.

At p. 11, there is a first reference in the opposition proceedings to *Univ. Book Store v. Univ. of Wis. Bd. of Regents.*

On pp. 11-12, Opposers write claiming that:

> **As attested by numerous MLBPA licensees, the judicially-themed slogans were placed on the products to indicate a connection between the products and Mr. Judge…"the apparel features judicial indicia, including the phrases 'ALL RISE' and 'HERE COMES THE JUDGE' in connection with Aaron Judge.");….Thus, at a minimum the Judge Marks indicate Mr. Judge as a secondary source of origin, and the use of those marks as reflected in the evidence of record is trademark use…**

**G. Concept of secondary source trademark has been waived**

At pp. 47-48 of my TTAB brief:

> **Opposers cannot now in a Reply Brief raise any points or contentions or submit any argument as to any matter that has been waived. See generally TBMP § 801.01 and, more particularly, Note 3 therein with cited cases; and TBMP § 801.02(c).**

A trademark can be a primary or a secondary source. If primary, the mark has to be distinctive and function as a trademark on the goods in question clearly designating the commercial source of the goods.

If secondary, the mark must still be distinctive and also function as a trademark on the goods in question but it is the trademark owner who is that source with the primary source then being the commercial point of purchase.

Simply put, an opposer's word mark - as to the specific class of goods in question - cannot be both a primary and a secondary source on the same class of goods. If at all, it is one or the other. The opposer must so properly plead and give written notice as that which its word mark supposedly is, that is, a primary commercial source of origin of the goods or a secondary source pointing to the trademark owner.

That which is pleaded must also be advanced during the trial stage and in their brief and sought to be legally proven (not merely stated as a conclusion) in the Opposers trial brief.

The first-time advancement in the reply brief of the concept of the Judge Marks being secondary source trademarks as opposed to being the commercial source of the goods should not be permitted but clearly was by TTAB and was legally wrong.

The Opposers in each of the three proceedings considered independently of each other have thus failed to prove proper trademark usage of the slogans ALL RISE and HERE COMES THE JUDGE and the mark JUDGE as being the commercial source manufacturer of the IC 25 goods.

The concept of the Opposers pleaded marks in each respective NOO as being secondary source trademarks was improperly considered by TTAB as not pleaded, tried or argued in its trial brief and was thus waived for all purposes.

TTAB's ruling that so-called Judge Marks are secondary source trademarks pointing to Aaron Judge in each of the three opposition proceedings and, as such, forms the basis for his trademark priority must be reversed.

### H. TTAB ruling that Judge Marks are secondary source trademarks

Apparently totally disregarding Opposers failure to plead, try during trial stage and/or argue the point in its trial brief, TTAB, prompted apparently by the Opposers Reply brief, ruled at pp. 45-48 that Opposers marks referred to as "judicial phrases and symbols" are not themselves commercial source indicators pointing to manufacture or production of the IC 25 goods but are secondary source trademarks "pointing to Aaron Judge as their secondary source" (see p. 48).

At p. 48, it is written:

> **In this case, we find the evidence of record-and Applicant's own arguments-sufficient to establish that the judicial phrases and symbols used by Opposers and their licensees serve to perform the function of identifying a secondary**

> **source for the apparel on which they appear. The Kaplan and Odle testimony, corroborated by numerous licensees' testimony, all supported by exhibits, credibly establishes that Opposers Aaron Judge and the MLBPA authorized and licensed the licensees-subject to Opposer MLBPA's supervision and quality review-to market apparel bearing judicial phrases and symbols in order to indicate a connection to Mr. Judge, the only major league player with a judicial-sounding surname. The evidence further establishes that these judicial phrases and symbols signified Mr. Judge to the relevant consuming public: sports fans and baseball fans in particular, and continue to do so…Here, as in *University of Wisconsin*, these phrases and symbols on the licensed apparel function as trademarks pointing to Aaron Judge as their secondary source.**

TTAB's main support was its 1994 *University of Wisconsin* case. It was only first raised in Opposers Reply brief.

The University of Wisconsin filed application to register two design marks centered around use of "Bucky Badger" and "Wisconsin Badgers" on various clothing items.

Opposers argued the University entered into a licensing agreement to sell merchandise with the applied for marks on it and "that the imprinting of such marks on clothing and other items of merchandise 'serves an ornamental purpose…'" and "as to each of the subject marks so used, 'the designation sought to be registered does not function as a mark'" (at p. 1388).

TTAB at p. 1396 said:

> **…<u>it is undisputed</u> <u>that</u>, to a significant portion of the relevant public, <u>the subject marks identify applicant</u> as the primary**

> **source of its educational and entertainment services and as the secondary source of the apparel imprinted with such marks.**

TTAB wrote on p. 1402:

> **…the marks identify applicant as the primary source of its educational and entertainment services and as the secondary source of the apparel imprinted with such marks…Opposers essentially concede that such is the case…**

TTAB at p. 1405 refers to the Applicant's initial brief:

> **Applicant urges that the record in these proceedings shows that the public perceives the University as the secondary source of apparel imprinted with "Bucky Badger" designs and/or the words "WISCONSIN BADGERS".**

It is after this reference that TTAB in that case (at p. 1405) referred to the quote from McCarthy § 24.03 (3rd edition 1994) which TTAB in my case referenced at p. 46:

> **As to such uses, it has been held that trademarks can serve to identify and distinguish a 'secondary source' in the sense of indicating sponsorship or authorization by a recognized entity…**

In my case at p. 46, TTAB thereafter quoted from p. 1406 of *Wisconsin* case. However, I add the opening clause of that sentence not quoted by TTAB:

> **Here, opposers essentially concede the fact…the subject marks signify applicant as the secondary source for apparel imprinted with those marks…the undisputed fact remains that a significant portion of the purchasing public associates the marks with applicant as a particular source for the goods.**

Context is extremely important to understand what and why TTAB in *Wisconsin* ruled the way it did. Clearly, in *Wisconsin*, applicant University in its pleadings and in its so-called "initial brief" justified its trademark usage by pleading, arguing and advancing that its marks were secondary source trademarks and were not the primary commercial source of the subject apparel goods on which the challenged trademarks (previously used by the University on other goods not involved in the litigation) were sought to now be used by the University per its trademark application. The Opposers in *Wisconsin* argued that secondary source trademarks did not apply as the marks were merely ornamental and did not point to any source of origin including the University.

In my case, I am stating it was absolutely wrong for TTAB to cite *Wisconsin* and to find that, based on the concept of secondary source trademark, there is trademark use by Opposers. This has nothing to do with reading the pleadings to do "substantial justice" where the NOO in each case clearly states – as I have shown – that Opposers are arguing the so-called Judge Marks were the commercial source as opposed to never pleading any marks as being a secondary source. The Opposers in my case never argued the concept of secondary source trademark at any time other than for the first time in their Reply brief and that should not be permitted.

TTAB used other cases to base its conclusion of secondary source trademarks but there are meaningful differences between those cases and my case.

The first one is *In re Olin Corp* 181 USPQ 182 (TTAB 1973). Applicant Olin had previously been awarded a trademark for a design registered for use on skis and now sought to use the same mark on t-shirts. The examiner refused because it was "merely ornamental." TTAB *In re Larry Harmon Picture Corp*., 2001 WL 1546642 at *4 discussing *Olin* stated:

> **…in the *Olin Corp.* case, an arbitrary design which was applied to the face of the T-shirts was found registrable on the basis that the design had previously been registered as a trademark by the applicant for skis. It was this association which caused the mark, as used on the T-shirts, to function as an identifier of a secondary source.**

TTAB refers to *In re Lululemon* on p. 45 apparently to show that ornamentation on T-shirts can function to show the secondary source and not the source of manufacture. Not referenced by TTAB but important was what TTAB in *Lululemon,* 105 USPQ2d 1684 at *5 (2013) stated as what "secondary source" actually means:

> ***Secondary Source***
>
> **Not every ornamental design will be considered *merely* ornamental if it is also recognizable as a trademark. As we have previously explained:**
>
> **…**

> ***In re Olin Corp.*, 181 USPQ 182, 182 (1973) (quoted in TMEP § 1202.03(c) (referring to such wording or designs as indicating a "secondary source")).[4] Applicant also argues that it has used the same mark as the applied-for mark on related goods and services, thereby showing that consumers will perceive it as a trademark here.[5]**
>
> **[4] The terminology "secondary source" should not be confused with the synonym for acquired distinctiveness, "secondary meaning." In the context of an ornamentation refusal, "secondary source" simply means that the use of the design or words would be perceived by the consumer as an indicator of source due to the applicant's prior use or registration of the mark for other goods or services (not the applied-for goods)….TMEP § 1202.03(c), citing *In re Olin Corp.,…* In both cases, the consumer would understand the mark on clothing to refer to the applicant's previously established mark for other goods or services. In contrast, "secondary meaning" concerns whether matter that is not inherently distinctive has, through substantially exclusive use on the goods in question, been transformed, in the eyes of consumers, into a source indicator.**

You cannot properly seek to use secondary source trademark concept by claiming that the reason the public recognized your mark as a trademark on the IC 25 goods is because of its use on those goods in that case. The opposer is compelled to prove trademark usage of the mark it now claims on the IC 25 goods was previously used by that same opposer on <u>other</u> type goods not involved in the current proceeding.

There has been no evidence presented that Opposers used the word marks ALL RISE, HERE COMES THE JUDGE and JUDGE as trademarks on other goods and/or that, if there was such usage, that said usage was trademark usage on these other non-IC25 goods which then over time developed into the public perceiving such usage as source identifying. TTAB decision in my case makes no such reference to any such prior trademark usage by the Opposers of ALL RISE, HERE COMES THE JUDGE and JUDGE on other than the supposed IC 25 goods which pertain to my three ITU filings.

TTAB in my decision on pp. 47-48 also said that, beyond what the TMEP states in § 1202.03(c), there are other ways to prove secondary source trademarks:

> **The qualifications for serving as a secondary source indicator are not, however, limited to the TMEP's examples. A party may submit "other evidence (such as evidence of promotion of the matter as a mark, survey evidence demonstrating purchaser perception of the matter as a mark, etc.) showing that purchasers recognize that matter as an indication of the source of the goods."** ***In re Pro-Line*****, 28 USPQ2d (1141) at 1142…**

TTAB misapplied the *Pro-Line* case. The quote was cropped. This is the full sentence:

> ***2 Such matter may also be found to be registrable if applicant submits other evidence (such as evidence of promotion of the matter as a mark, survey evidence demonstrating purchaser perception of the matter as a mark, etc.) showing that purchasers recognize that matter as an indication of the source of the goods…**

I underlined the opening clause of the sentence which provides the context. TTAB in *Pro-Line* was not saying there are other ways [in addition to TMEP § 1202.03(c)] to prove a secondary source trademark. TTAB was saying that if the applicant could prove the mark in question – such as by way of promotion and advertising or through a survey – had over time became "an indication of the source of goods" in the mind of the purchasing public, then it "may also be found to be registrable." This is "secondary meaning" as discussed by TTAB in *In re Lululemon* case not a "secondary source" reference.

So how did TTAB in my case (see p. 45) attempt to justify TMEP recognized secondary source trademark usage. After referring to *In re Olin*, *In re Lululemon,* TMEP § 1202.03(c) and McCarthy § 3:8, first mention is made of "secondary source" with reference to Hoffmann's argument "that Opposer's use of the marks is mere ornamentation" and concluding "the argument fails." The next two sentences at pp. 45-46 are TTAB's predicate justification for secondary source trademarks:

> **Applicant's argument, quoted above, actually concedes that consumers wear Opposers' licensed goods to show support or approval for other services, namely, Aaron Judge's baseball entertainment services. And Opposers' evidence supports this.**

To me this was a wrongful attempt to come within the ambit of TMEP § 1202.03(c)(3), that is, by inserting a conclusion as to "non-ornamental use of the mark in commerce on other goods <u>or services</u>."

TTAB never before <u>or</u> after using this assertion referred to any claim Opposers were making that so-called "entertainment services" of Mr. Judge formed the basis of a prior use of any of the pleaded marks as trademarks so as to fall within the ambit of TMEP § 1202.03(c)(3) "services" predicate.

Far more important is that none of the Opposers ever refer to concept of "<u>entertainment</u> services" of Mr. Judge being involved at all. That term is not used in their pleadings, in any declarations or in their trial brief or reply brief.

The mere reference to "Judge's goods <u>and services</u>" (see each respective NOO as follows: par. 12 for HERE COMES THE JUDGE; par. 11 for ALL RISE; and par. 11 for the design mark) are simply conclusions and perfunctory labels without facts and, thus, don't interpose the issue into my case.

Opposers failed to identify and discuss those services during trial nor did they make any argument in their trial brief. Thus, any claim that Mr. Judge's entertainment services was the basis for use of some pleaded distinctive trademark on it as used on goods other than IC 25 has been waived.

In TTAB's conclusion on p. 46 quoted by me in this brief at p. 54, reference is made to Judge's entertainment services as being a base on which to justify the secondary source conclusion.

In the conclusion, we find supposed justification due to "judicial phrases and symbols used by Opposers and their licensees serve to perform the function of identifying a secondary source for the apparel on which they appear." The nexus between these supposed "entertainment services" and the catch phrase "judicial phrases and symbols" is fallacious and has no basis in the record.

The fallacy of TTAB's conclusion is two-fold:

First: TTAB cannot base its conclusion in supposed use of mere "judicial phrases and symbols" on "apparel" which "…indicate a connection to Mr. Judge…" (p. 48). TMEP § 1202.03(c) and the cases require proof of prior "non-ornamental use of the mark [and the mark has to be a pleaded mark in these opposition proceedings] in commerce on other goods or services."

There is no proof in the record that these so-called en masse "judicial phrases and symbols" are distinctive in the trademark sense and each (whatever they supposedly are) did previously perform a source identifying function "on other goods or services."

Where is the proof in the record, for example, that a judicial gavel or robe is in any manner a distinctive mark such that it is a trademark pointing as a source identifier to Mr. Judge on "other goods?" There isn't any. No such claim was ever pleaded or proven or briefed. Gavels and judicial robes are not trademarks.

As discussed previously, concept of secondary meaning was never pleaded, tried or argued in Opposers trial brief and thus has been waived for all purposes.

Second: there is no predicate basis for TTAB's secondary source usage. Where is proof in the record that Opposers actually pleaded that a distinctive mark(s) (indicating a source identifying function) was actually used on non-IC 25 goods prior to my ITU filing dates?

The conclusion of TTAB on p. 48 lacks the basis of prior trademark use on "other goods" as explained by TTAB in the *In re Lululemon* case which I quoted on pp. 51-52 of this brief from footnote #4 in that case.

The record needs to be examined to see the basis presented by TTAB for secondary source. At pp. 20-28, TTAB presents the "Opposers' Evidence." On p. 21 it is stated:

> **Mr. Kaplan also testifies that Mr. Judge has been a MLBPA member since 2016 (¶12); numerous licensees have obtained approval to produce and market products bearing his personal indicia, the most pertinent of which are described below; the declarations of ten such licensees are of record, with exhibits, such as their license agreements, approvals, and depictions of apparel and other goods bearing Mr. Judge's personal indicia (¶¶11, 13).61 At all relevant times, Mr. Judge was the only member of a Major League baseball team with the surname "Judge," so the licensees' "[p]roducts featuring Mr. Judge typically include judicial indicia such as judicial symbols like a judge's gavel, an image of a courthouse or the scales of justice, and/or phrases associated with the judicial and legal system, including ALL RISE,**

> **HERE COMES THE JUDGE, and ORDER IN THE COURT, among others, as plays on his surname Judge." (¶ 19.)**

What follows in the decision at pp. 21-28 are depictions and descriptions pf claimed licensed merchandise with likenesses of Mr. Judge in uniform; holding gavel; swinging a gavel or a bat; the #99; his full name; New York Yankees trademarks insignia; hats; a baseball; Yankee stadium, etc.; the slogans "ALL RISE, "HERE COMES THE JUDGE" and "JUDGEMENT DAY." Each of these references refer to the involved IC 25 apparel in my case and are thus not predicate goods that can be used to substantiate that trademark usage of the pleaded marks in my case had occurred "on other goods" prior to my ITU filing dates.

## I. Opposers Reply Brief re: secondary source cases

Opposers cited – other than the *Wisconsin* case – three cases on secondary source which TTAB did not cite.

- *In re Paramount Pictures Corporation* – summarized in *In re Larry Harmon* *4:

> **…the MORK & MINDY mark was held registrable for decalcomanias, on the basis primarily of its significance as a indicator of source or origin in the proprietor of the Mork & Mindy television series, although it was also noted to have already been registered as a trademark for various collateral products. The Board stated that while the names MORK & MINDY were certainly part of the ornamentation of the decals, they also indicated source in the same manner as the design in the *Olin Corp.* case.**

TTAB said its Olin test controlled the decision here and stated:

> **…the stylized "O" would be regarded as a trademark of Olin Corporation, hence, it can serve as a secondary indication of source when applied to T-shirts…** (at *3)

- *Paddington & Co. v. Lead Co*, 2009 WL 4073519 (TTAB)

This is an opposition proceeding. Applicant wanted to register a mark on IC 25 clothing. Paddington opposed claiming:

> **…continuous use in commerce of the image of the Paddington Bear character since at least as early as 1959 has provided Paddington with common law rights in and to this character image…**

TTAB found Paddington had priority due to common law usage of the Paddington Bear mark on other than IC 25 clothing as follows:

> **We likewise find that the evidence of record clearly establishes opposer's use and/or licensed use of the Paddington Bear character mark…prior to the filing date of applicant's intent-to-use application….Contrary to applicant's contention, the use of the Paddington Bear character on the above goods is not pure ornamentation, but rather serves as a secondary source trademark.**
>
> (at *3)

- *In re Larry Harmon Picture Corp.*

Proving my point that the issue must be pleaded and argued, TTAB wrote:

> **Applicant argues that the ornamentation refusal is improper because "the mark is recognized as an indicator of secondary source or sponsorship for the goods because the term 'another fine mess' is considered the 'trademark' saying of Oliver Hardy of the comic duo Laurel and Hardy." (Brief p. 3).**
>
> (at *1)

TTAB stated the issue before ruling on it as follows:

> **The question which remains is whether the presence of this signature phrase serves to perform the function of identifying a secondary source for the goods**.
>
> (at *5)

The three cases cited in Opposers Reply brief actually substantiate that for secondary source to be properly in a case:

- the parties involved must have raised and argued the issue before TTAB can duly rule on it; and
- as stated in TMEP § 1202.03(c) and *In re Lululemon,* the pleaded mark that is claimed as a secondary source trademark must have been used – in the past – by the applicant (or the opposer in an opposition case) as a trademark (whether an awarded trademark or one in use) on "other goods or services" (<u>not</u> the applied for goods), that is, "as an indicator of source" (see *In re Lululemon*).

**J. <u>The record and prior use of the pleaded marks for other goods (not the applied-for goods)</u>**

At the outset, in order for "other goods" to be the predicate for "secondary source" per TMEP § 1202.03(c) and per *In re Lululemon* and other cases, the marks involved would have to:

- be specifically pleaded in the respective NOO;

- be identified in the trial declarations and proven to have been used as trademarks prior to my respective ITU filings; and
- be substantiated by argument in Opposers trial brief to have been non-ornamental use and function as trademarks indicating source of origin to the relevant purchasing public of those "other goods."

At pp 20-28, TTAB discussed "Opposers' Evidence" which was in the form of licensee declarations enumerated in footnote # 61 on p. 21.

Reference is made to:

> **…the written declaration testimony of Evan Kaplan, the former Director of Licensing and Business of Opposer MLBPA, and current Managing Director of its subsidiary MLB Players, Inc., which represents the MLBPA in connection with the use and licensing of intellectual property rights it owns or controls.[60]**
>
> **…**

Kaplan also testifies:

> **…numerous licensees have obtained approval to produce and market products bearing his personal indicia, <u>the most pertinent of which are described below</u>; <u>the declarations of ten such licensees are of record</u>, <u>with exhibits</u>, <u>such as</u> their license agreements, approvals, <u>and</u> <u>depictions of apparel</u> <u>and other goods bearing Mr. Judge's</u> <u>personal indicia</u> (¶¶11, 13).[61]… licensees' "[p]roducts featuring Mr. Judge typically include judicial indicia such as judicial symbols like a judge's gavel, an image of a courthouse or the scales of justice, and/or phrases associated with the judicial and legal system, including ALL RISE, HERE COMES THE JUDGE, and ORDER IN THE COURT, among others, as plays on his surname Judge." (¶ 19.)**

TTAB provides what it considered "the most pertinent" relevant examples of IC 25 goods offered for sale by licensees with depictions shown at pp. 22-28.

Disregarding whether or not the relevant pleaded marks function as trademarks on the goods offered for sale, I point out that the record is devoid of proof of prior use in commerce of the pleaded marks on "other goods" being one of the required predicates for consideration of whether the pleaded marks in my case are indicative of secondary source as found by TTAB. Further, more than use is required. It is prior use in an "non-ornamental manner" indicating and pointing to a source of origin for these "other goods" (in my case – not IC 25 goods), that is, prior trademark usage.

What are these supposed "other goods" <u>in the record</u> "bearing Mr. Judge's personal indicia" and, if in the record, where is the proof that matter was pleaded, tried and briefed by opposers in its trial brief?

I reviewed each of the ten licensee declarations referred to by TTAB on p. 21 FN 61 and declaration of Laurence Raff, Outerstuff [74 and 75 (confidential) TTABVUE].

On this point, it does not matter what is contained in the record as to IC 25 goods sold. The question here is: what such "other goods" were sold, when and was there "non-ornamental" usage to create trademark usage prior to my ITU filings.

TTAB's Opinion offers no actual examples of such trademark usage of "other goods" prior to my ITU filings.

Now as to the submitted trial declarations pertaining to sales of "other goods":

Declaration Rick Boelter [Boelter Brands 52 TTABVUE, 53 TTABVUE (confidential)]

[5] [redacted]

In par. 13 (see p. 26 this brief), sales started in August 2017. That time frame was subsequent to my ITU filings on July 14, 2017 for my word marks.

Declaration Matthew Katz [Team Beans 60 TTABVUE, 61 TTABVUE (confidential)]

[6] [redacted]

In par. 13 (see p. 27 this brief), sales started in September 2017. That time frame was subsequent to my ITU filings on July 14, 2017 for my word marks.

Declaration Brian Rutt [The Emblem Source, 66 TTABVUE, 67 (confidential)]

In par. 3 he states:

---

[5] ***Redaction Legend:*** ***Confidential Information – Content: licensee product sales.***
[6] ***Redaction Legend****:* ***Confidential Information – Content: licensee product sales.***

> **The Emblem Source sells patches wholesale and direct-to-consumer through its own website,...The Emblem Source's FanPatches can be and are typically affixed to apparel and headwear products**.

[7] [redacted]

TTAB on p. 26 showed those three patch designs stating:

> **In June 2017, licensee The Emblem Source began selling <u>clothing patches</u> bearing the following judicial and baseball phrases and symbols and Mr. Judge's surname:**

and its FN 70 referred to Rutt declaration; in actuality, it is IC 25 goods.

In summary, it is my position that the record and TTAB decision are respectively not grounded in any proof, as mandated by TMEP § 1202.03(c) and case law, that the pleaded marks in each respective opposition proceeding "would be recognized as a mark through its use with goods and services other than…" the IC 25 goods at issue, that is, prior "non-ornamental use" in a trademark manner.

**<u>Point 14</u>**

## <u>Waiver</u>

As to all matters which Opposers should have pled in each respective NOO to justify Section 2(d) priority, but failed to do, those matters are waived.

---

[7] ***<u>Redaction Legend</u>*: *Confidential Information – Content: licensee product sales.***

For all matters that Opposers failed to discuss or failed to substantiate with facts in the trial stage, those matters have been waived.

Concerning all matters which Opposers:

- failed to plead but incorporated in its trial brief; or
- did plead but did not offer proof or sufficient proof at trial stage but incorporated in its trial brief; or
- did plead and did include in the trial stage but failed to argue or meaningfully argue in its trial brief; and,

therefore, each of said matters are waived.

Please see my TTAB brief section 17 at pp. 47-48 and all the cases cited.

I cite TBMP § 801.01 with all cases in FN 3 and all applicable law.

I cite TBMP § 801.02(c) with all cases in FN 3 and all applicable law.

**Point 15**

## Conclusion

Opposers failed to prove § 2(d) priority for pleaded marks in each NOO prior to my respective three ITU filing dates.

Therefore, this Court is requested to reverse TTAB's ruling and find that my ITU filings should be permitted by the USPTO.

**STATEMENT OF COMPLIANCE**

In making my motion, in good faith, I have used my best efforts to comply with Federal Rule of Appellate Procedure 27(a)(2) and (d) and with Federal Circuit Rule 27(a) and (d).

The order of this Court dated and filed September 13, 2024 stated that Appellant's "opening brief" is "not to exceed 14,000 words…" I state that my brief starting with the "Introduction" section contains 13,996 words. As an aide for the Court, I have additionally included a Table of Contents.

**STATEMENT 28 U.S.C. § 1746**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 26, 2025

Respectfully submitted,

MICHAEL P. CHISENA

By: /s/ Michael P. Chisena

Appellant *pro se*