**23-2073**

# United States Court of Appeals for the Federal Circuit

MICHAEL P. CHISENA,

*Appellant,*

– v. –

MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION, AARON JUDGE,

*Appellees.*

*On Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 91240180, 91242556, and 91243244*

## BRIEF FOR APPELLEES

IRENE M. HURTADO
MCCARTER & ENGLISH, LLP
250 W. 55th Street, 13th Floor
New York, New York 10019
(212) 609-6800
ihurtado@mccarter.com

LORI JANE SHYAVITZ
ALEXANDER T. HORNAT
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, Massachusetts 02110
(617) 449-6500
lshyavitz@mccarter.com
ahornat@mccarter.com

*Counsel for Appellees*

JUNE 2, 2025

CP COUNSEL PRESS (800) 4-APPEAL • (380985)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CORRECTED CERTIFICATE OF INTEREST

**Case Number** 2023-2073

**Short Case Caption** Chisena v. Major League Baseball Players Association

**Filing Party/Entity** Major League Baseball Players Association

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/10/2023

Signature: /s/ Alexander T. Hornat

Name: Alexander T. Hornat

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Major League Baseball Players Association | | |
| Aaron Judge | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Case: 23-2073 Document: 9 Page: 5 Filed: 06/02/2025



# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2023-2073

**Short Case Caption** Chisena v. Major League Baseball Players Association

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 07/10/2023

by ☑ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☐ Other: ____________

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Michael P. Chisena | P.O. Box 7619<br>Garden City, NY 11530 |
| | |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 07/10/2023

Signature: /s/ Alexander T. Hornat

Name: Alexander T. Hornat

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ v

STATEMENT OF RELATED CASES ........ 1

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES PRESENTED ........ 1

STATEMENT OF THE CASE ........ 2

I. AARON JUDGE'S METEORIC RISE TO STARDOM ........ 2

II. THE MEDIA, PUBLIC, AND LICENSEES IDENTIFY MR. JUDGE WITH JUDICIALLY-THEMED PLAYS ON HIS SURNAME ........ 4

III. APPAREL ITEMS AND OTHER GOODS ARE PROMOTED UNDER THE JUDGE MARKS ........ 5

IV. APPLICANT SEEKS TO REGISTER AND USE MARKS ASSOCIATED WITH MR. JUDGE ........ 11

V. PROCEEDINGS BEFORE THE BOARD AND THE BOARD'S OPINION ........ 15

SUMMARY OF ARGUMENT ........ 17

ARGUMENT ........ 20

I. STANDARD OF REVIEW ........ 20

II. CHISENA HAS CONCEDED APPELLEES' PRIOR SALES OF PRODUCTS BEARING THE JUDGE MARKS AND THE RECORD ESTABLISHES APPELLEES' PRIOR RIGHTS IN THE JUDGE MARKS ........ 21

III. THE BOARD CORRECTLY HELD THAT APPELLEES' PLEADINGS PROVIDED FAIR NOTICE OF APPELLEES' MARKS, AND THAT CHISENA WAS AFFORDED A FULL AND FAIR



ME1 53367892v.1

OPPORTUNITY TO LITIGATE THIS ISSUE IN THE PROCEEDINGS .......... 23

A. Appellees' Pleadings Satisfied the Applicable Pleading Standards .......... 23

B. The Judge Marks Were Tried By Implied Consent .......... 27

IV. THE JUDGE MARKS ARE TRADEMARKS .......... 30

A. The Judge Marks Are Distinctive .......... 30

1. The Judge Marks Do Not Describe the Goods with Which They Are Used .......... 31

2. Chisena-Not Appellees-Waived the Distinctiveness Issue .......... 32

3. "Judge" Is Not Primarily Merely a Surname .......... 34

4. ALL RISE Is Distinctive of Apparel .......... 37

B. The Judge Marks Are Source Indicators .......... 37

1. Appellees Made *Bona Fide* Trademark Use of the Judge Marks .......... 38

2. Consumers Associated the Goods Bearing the Judge Marks with Mr. Judge .......... 40

a. Prior Non-Ornamental Use of the Judge Marks with Other Goods or Services Is Not a Prerequisite to Their Functioning as Secondary Source Marks-Consumer Perception Controls .......... 42

b. Appellees Have Pleaded and Proven Use of the Judge Marks .......... 49

V. APPELLEES PLEADED AND PROVED OWNERSHIP AND USE, AND THEREFORE, ADOPTION, OF THE JUDGE MARKS .......... 51

A. Appellees' Rights in and to the Judge Marks Are Determined By Making Use Of Those Marks, Not By Language in Documents, Use of the ™ Symbol, or Filing of Trademark Applications .......... 53

1. The Language in the MLBPA License Agreements and Product Approval Forms Is Not Dispositive .......... 53

2. Use of the ™ Symbol is Not Required Under the Law............... 54

3. The Licensee Declarations Confirm Use of the Judge Marks as Trademarks with Apparel and Other Goods............................ 55

4. That Appellees Did Not File Trademark Applications Does Not Diminish or Disprove Their Common Law Rights............... 56

5. The Trademark Applications Filed By Mr. Judge's Mother Are Not Inconsistent With Mr. Judge's Claim of Common Law Rights in the Judge Marks.................................................... 57

CONCLUSION AND STATEMENT OF RELIEF ......................................... 60

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Compliance Techs., Inc. v. Advanced Chem. Transp., Inc.*,
No. 9207259, 2023 WL 2496311 (T.T.A.B. Mar. 2, 2023) ....27

*Araujo v. Framboise Holdings Inc.*,
99 F.4th 1377 (Fed. Cir. 2024) ....21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....26

*In re Bayer Aktiengesellschaft*,
488 F.3d 960, 970 (Fed. Cir. 2007) ....20

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015) ....47

*Beach Mart, Inc. v. L&L Wings, Inc.*,
784 F. App'x 118 (4th Cir. 2019) ....43

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) ....26

*Broadway Catering Corp. v. Carla Inc.*,
215 U.S.P.Q. 462 (T.T.A.B. 1982) ....58

*Cent. Fid. Banks, Inc. v. First Bankers Corp. of Fla.*,
225 U.S.P.Q. 438 (T.T.A.B. 1984) ....43, 52

*Chicago Corp. v. North Am. Chicago Corp.*,
20 U.S.P.Q.2d 1715 (T.T.A.B. 1991) ....33

*Cross Country Bank v. Cross Country Fin. Corp.*,
Serial No. 75/387,134, 2003 WL 21716216 (T.T.A.B. July 22, 2003) ....29

*CSL Silicones, Inc. v. Midsun Grp. Inc.*,
301 F. Supp. 3d 328 (D. Conn. 2018) ....54, 55

*In re Dare Foods Inc.*,
2022 U.S.P.Q.2d 291 (T.T.A.B. 2022) ....................................................... 59

*In re Dell Inc.*,
71 U.S.P.Q.2d 1725 (T.T.A.B. 2004) ....................................................... 39

*E.I. du Pont de Nemours & Co. v. Big Bear Stores, Inc.*,
161 U.S.P.Q. 50 (T.T.A.B. 1969) ............................................................. 21

*Earnhardt v. Kerry Earnhardt, Inc.*,
864 F.3d 1374 (Fed. Cir. 2017) ................................................................ 35

*In re Etablissements Darty Et Fils*,
759 F.2d 15 (Fed. Cir. 1985) ................................................................... 36

*Exec. Coach Builders, Inc. v. SPV Coach Co.*,
123 U.S.P.Q.2d 1175 (T.T.A.B. 2017) ....................................................... 22

*First Niagara Ins. Brokers Inc. v. First Niagara Fin. Group Inc.*,
476 F.3d 867 (11th Cir. 2007) ................................................................. 21

*Fisher Radio Corp. v. Bird Elec. Corp.*,
162 U.S.P.Q. 265 (T.T.A.B. 1969) ........................................................... 35

*Flame & Wax, Inc. v. Laguna Candles, LLC*,
2022 U.S.P.Q.2d 714 (T.T.A.B. 2022) ....................................................... 25

*In re GO & Assocs., LLC*,
90 F.4th 1354 (Fed. Cir. 2024) .......................................................... 38, 40

*Good Humor Corp. v. Popsicle Japan K.K.*,
810 F. Supp. 1001 (E.D. Wis. 1992) ......................................................... 29

*Hainline v. Vanity Fair, Inc.*,
301 F. App’x 949 (Fed. Cir. 2008) ............................................................ 31

*In re Hutchinson Tech. Inc.*,
852 F.2d 552 (Fed. Cir. 1988) ........................................................... 34, 36

*Herbko Int’l v. Kappa Books*,
308 F.3d 1156 (Fed. Cir. 2002) ................................................................ 21



ME1 53367892v.1

*Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.*,
811 F.2d 1470 (Fed. Cir. 1987) ....................................................................52

*Hylete LLC v. Hybrid Athletics, LLC*,
931 F.3d 1170 (Fed. Cir. 2019) ....................................................................43

*Johnson v. City of Shelby, Miss.*,
574 U.S. 10 (2014)..........................................................................................33

*Julien v. Desty*,
No. 91268147, 2023 WL 11758473 (T.T.A.B. Aug. 11, 2023)........................30

*Just Enters., Inc. v. O'Malley & Langan, P.C.*,
560 F. Supp. 2d 345 (M.D. Pa. 2008)...............................................................26

*In re Larry Harmon Picture Corp.*,
Serial No. 74/468,324, 2001 WL 1546642 (T.T.A.B. Nov. 15, 2001) ............................................................................40, 41, 45, 46

*Lewis Silkin LLP v. Firebrand LLC*,
129 U.S.P.Q.2d 1015 (T.T.A.B. 2018)........................................................26, 33

*Lindeboom v. Plaster City Digital Post, LLC*,
No. CV088077SVWJTLX, 2009 WL 10670660 (C.D. Cal. Apr. 29, 2009) ...........................................................................................31

*In re Lizzo LLC*,
2023 U.S.P.Q.2d 139, 2023 WL 1507238 (T.T.A.B. Feb. 2, 2023) ..................45

*In Re Luckenbach Texas, Inc.*,
No. 87800638, 2022 WL 634434 (T.T.A.B. Feb. 22, 2022).............................36

*In re Lululemon Athletica Canada Inc.*,
105 U.S.P.Q.2d 1684 (T.T.A.B. 2013).............................................................46

*Marks v. Fivable Inc.*,
No. 91271815, 2024 WL 4133070 (T.T.A.B. Aug. 30, 2024)..........................27

*Mystery Ranch, Ltd. v. Terminal Moraine Inc.*,
2022 U.S.P.Q.2d 1151 (T.T.A.B. 2022) ..........................................................59

*Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*,
937 F.2d 1572 (Fed. Cir. 1991) .....................................................................21

*In re Olin Corp.*,
181 U.S.P.Q. 182 (T.T.A.B. 1973) ....................41, 46

*Paddington & Co. v. Lead Co.*,
2009 WL 4073519 (T.T.A.B. May 29, 2009) ....................46

*In re Paramount Pictures Corp.*,
213 U.S.P.Q. 1111 (T.T.A.B. 1982) ....................46

*In re Pro-Line*,
28 U.S.P.Q. 2d 1141 (T.T.A.B. 1993) ....................45, 46

*Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*,
98 U.S.P.Q.2d 1921 (T.T.A.B. 2011) ....................22, 28

*Sears, Roebuck & Co. v. Watson*,
204 F.2d 32 (D.C. Cir. 1953) ....................36

*Singhal v. Mentor Graphics Corp.*,
328 F. App'x 648 (Fed. Cir. 2009) ....................43

*Stone Lion Capital Partners, L.P. v. Lion Capital LLP*,
746 F.3d 1317 (Fed. Cir. 2014) ....................20

*Three Blind Mice Designs Co. v. Cyrk, Inc.*,
892 F. Supp. 303 (D. Mass. 1995) ....................39

*Turner v. HMH Pub. Co.*,
380 F.2d 224 (5th Cir. 1967) ....................43

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992) ....................31, 32, 34

*Univ. Book Store v. Univ. of Wisc. Bd. of Regents*,
33 U.S.P.Q.2d 1385 (T.T.A.B. 1994) ....................40, 49

*In re Vox Populi Registry Ltd.*,
25 F.4th 1348 (Fed. Cir. 2022) ....................38, 40

*W. Fla. Seafood, Inc. v. Jet Rests.*, Inc.,
31 F.3d 1122 (Fed. Cir. 1994) ....................22

*Yamaha Int'l Corp. v. Hoshino Gakki Co.*,
840 F.2d 1572 (Fed. Cir. 1988) ....................................................................41

*Zheng Cai v. Diamond Hong, Inc.*,
901 F.3d 1367 (Fed. Cir. 2018) ....................................................................20

*Zirco Corp. v. Am. Tel. & Tel. Co.*,
21 U.S.P.Q.2d 1542 (T.T.A.B. 1991) ..........................................................21

**Statutes**

15 U.S.C. § 1052(d) ..............................................................................................21

15 U.S.C. § 1055....................................................................................................43

15 U.S.C. § 1071(a)(1)..............................................................................................1

15 U.S.C. § 1127 ..........................................................................................38, 39

28 U.S.C. § 1295(a)(4)(B) ........................................................................................1

**Other Authorities**

1 McCarthy on Trademarks & Unfair Competition § 11:2 (5th ed.) ......................30

2 McCarthy on Trademarks & Unfair Competition § 16:18.50 (5th
ed.) ..........................................................................................................................56

2 McCarthy on Trademarks & Unfair Competition § 18:79 (5th ed.) .............58, 59

3 McCarthy on Trademarks & Unfair Competition § 19:148 (5th ed.) ..................55

37 C.F.R. § 2.116(a)..................................................................................................25

Fed. R. Civ. P. 8(e)...................................................................................................30

Fed. R. Civ. P. 15(b)(1)-(2).......................................................................................27

TBMP § 309.03........................................................................................................30

TBMP § 309.03(c)(2)................................................................................................27

TBMP § 503............................................................................................................24

TBMP § 505............................................................................................................24

TBMP § 507.03(a)-(b) ........................................................................................29

TMEP § 1202.03(c).........................................................................44, 45, 46, 47

TMEP § 1211 ..................................................................................................36

USPTO Trademark ID Manual, Term ID 026-98 ..................................................49

## STATEMENT OF RELATED CASES

There are no related pending cases.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal in accordance with 15 U.S.C. § 1071(a)(1) and 28 U.S.C. § 1295(a)(4)(B) because the decision appealed from is a final judgment of the Trademark Trial and Appeal Board (the "Board"), which disposes of the parties' claims.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the Board correctly held that Appellees' pleadings provided fair notice of Appellees' marks, and that Chisena was afforded a full and fair opportunity to litigate the issues in the proceedings.

2. Whether the Board correctly held that the Judge Marks, including ALL RISE and HERE COMES THE JUDGE, are distinctive for apparel such as t-shirts and baseball caps.

3. Whether the Board correctly held that Appellees established priority where Appellees submitted substantial evidence that, prior to Chisena's constructive use dates: (A) Appellees made non-ornamental use of the Judge Marks, and (B) the consuming public strongly associated the Judge Marks with Mr. Judge, and thus perceived ornamentation on apparel and headwear to identify Mr. Judge as a source thereof.

4. Whether the Board correctly held that Appellees' evidence of record

proved adoption, ownership, and use of the Judge Marks.

## STATEMENT OF THE CASE

### I. AARON JUDGE'S METEORIC RISE TO STARDOM

Aaron Judge is the star Right Fielder for the New York Yankees of Major League baseball, one of Major League baseball's most storied franchises and located in its biggest market. Appx5621; Appx5425. Since his Major League debut on August 13, 2016, when he hit a home-run in his very first Major League at-bat, Mr. Judge has been one of the most exciting, popular, and marketable players in all of Major League baseball. Appx5424-25.

The excitement carried into his award-winning 2017 rookie season—Mr. Judge was named the American League Rookie of the Month in April, May, and June (the first three months of the season) and the American League Player of the Month in June and September; he became the second rookie in Major League history to hit 17 home runs before the month of June; he won Major League baseball's nationally televised Home Run Derby on July 10, 2017; he was the leading All-Star vote getter in the American League and, accordingly, was named the starting right fielder for the American League in Major League baseball's nationally-televised All-Star Game held on July 11, 2017; he led the American League with 52 home runs on the season, which broke the all-time rookie-season home run record; and he was unanimously voted Rookie of the Year. Appx5621-22.

Mr. Judge's unparalleled success on the baseball diamond quickly led to overwhelming popularity and marketability. For example, not even halfway into his 2017 rookie season, Mr. Judge had the best-selling jersey in all of Major League baseball. Appx5424. Mr. Judge appeared on the Tonight Show Starring Jimmy Fallon in May 2017. Appx936-37. On July 10, 2017, ESPN said he "has become more in demand than any young star in the game's history," and on July 11, 2017, CNN called him the "new face of baseball." Appx1363-65; Appx3279. By July 11, 2017, Mr. Judge's management team had received more than one hundred endorsement requests from companies in diverse product categories, including national brands like Reebok and Pepsi, memorabilia companies, and a tire store. Appx5614-15. This ultimately led to Mr. Judge securing numerous endorsement deals involving a wide assortment of brands, including Pepsi, Sony, Fanatics, Under Armour, Rawlings, JBL, Oakley, Audi, Jersey Mike's Subs, Hulu, Bloomingdale's, and Adidas. Appx1341-42; Appx1371; Appx1382; Appx1438-40; Appx1497; Appx1501-02; Appx1505-06; Appx1509; Appx1513; Appx1517; Appx1559; Appx1566; Appx1574-77; Appx1592-93; Appx1597; Appx1607-09; Appx1612; Appx1621; Appx1626; Appx1643; Appx3385; Appx3158; Appx3172; Appx3185; Appx5626-27; Appx5614-16.

## II. THE MEDIA, PUBLIC, AND LICENSEES IDENTIFY MR. JUDGE WITH JUDICIALLY-THEMED PLAYS ON HIS SURNAME

As a formidable, authoritative power-hitter, and as the only Major League player with a surname having a judicial and legal connotation, plays on Mr. Judge's surname became a hallmark of his public persona from the beginning of his Major League career. Appx5426; Appx5458-533. In December 2016—after having spent only a couple months in the Majors, and before the beginning of his rookie year—a licensed company began selling "JUDGEMENT DAY" t-shirts with a picture of Mr. Judge holding an oversized judge's gavel like a baseball bat. Appx3584. ALL RISE and HERE COMES THE JUDGE t-shirts were soon to follow.

Since at least as early as April 1, 2017, the hashtags #ALLRISE and #HERECOMESTHEJUDGE were regularly used on social media in connection with Mr. Judge; and in May 2017, Mr. Judge was on the cover of Sports Illustrated with the headline: "All Rise! The Yankees Youth Movement Is in Session. The Powerful AARON JUDGE Presiding." Appx1694; Appx1696-731; Appx2654; Appx2663-76; Appx2821-22; Appx5623-24; Appx5616; Appx1840-47; Appx1910. Numerous other media outlets also began identifying Mr. Judge under these names. *See, e.g.*, Appx2674; Appx1912-13; Appx2686; Appx3129; Appx3212; Appx3219.

Mr. Judge himself, in conjunction with the Yankees and Major League baseball, also adopted these names. The team incorporated Mr. Judge's ALL RISE nickname into the game-day experience by putting "ALL RISE" on the stadium

videoboard during Mr. Judge's first at-bat at every Yankees home game. Appx5625. In May 2017, the Yankees and Major League baseball used "#AllRise" on social media to announce the Yankees' creation of a cheering section for Mr. Judge in the Right Field seats of Yankee Stadium called THE JUDGE'S CHAMBERS. Appx5625; Appx2494-95; Appx2534-36. Each game, eighteen fans are selected to sit in THE JUDGE'S CHAMBERS section where they are given a black judge's robe with Mr. Judge's number 99 on the back to wear during the game and a foam gavel souvenir with his "ALL RISE" nickname on it that they can take home. *See, e.g.*, Appx996-99; Appx2494-508; Appx2529-36; Appx2550-51; Appx2556-57; Appx3274-75. Fans in THE JUDGE'S CHAMBERS section also hold ALL RISE signs to further honor and cheer on Mr. Judge. *See, e.g.*, Appx996-99; Appx2504-06. Mr. Judge chose to use his ALL RISE nickname on his jersey, instead of his surname, during Major League baseball's 2017 Players Weekend. Appx5624-25; Appx3511. Further, Mr. Judge's home runs were announced on the radio and television broadcasts using the monikers HERE COMES THE JUDGE and ALL RISE. Appx5624; Appx2755-57; Appx3353; Appx3391.

## III. APPAREL ITEMS AND OTHER GOODS ARE PROMOTED UNDER THE JUDGE MARKS

The Judge Marks were also quickly capitalized into consumer goods. For more than fifty (50) years, Opposer MLBPA has served as the union of Major League baseball players, and represents the interests of professional baseball players

who are members of teams in the American League and in the National League. Appx5421. Mr. Judge has been a member of Opposer MLBPA since August 13, 2016. Appx5424; Appx5621.

MLBPA conducts a worldwide group licensing program on behalf of its members (the "Group Licensing Program"),[1] among its business activities. Mr. Judge, like other current MLBPA members, participates in the Group Licensing Program. Appx5421.Appx5424. Through the Group Licensing Program, MLBPA enters into license agreements with third parties for a wide assortment of products and services on behalf of MLBPA's members, including, but not limited to, apparel and headwear, baseball trading cards, memorabilia, bobblehead dolls, bags, baseballs and baseball bats, posters, pennants, collectibles, toys, drinkware, and computer and video games. Appx5421-22. Thus, through the Group Licensing Program, MLBPA is authorized to license Mr. Judge's rights and to enforce Mr. Judge's rights against unauthorized use in a manner that violates MLBPA's exclusive rights therein, among other uses. Appx5421-24.

In view of Mr. Judge's on-field success, MLBPA's licensees soon began submitting approval request forms under the Group Licensing Program for Judge-related goods. Appx5619-20; Appx5424. Even though he was a rookie, in 2017

[1] Since 2019, the Group Licensing Program has been managed by MLBPA's subsidiary, MLB Players, Inc. Appx5420.

MLBPA received more product requests for Mr. Judge than it did for any other Major League baseball player, and Judge-related products were top sellers. Appx5425. The requests covered goods across all product categories, such as apparel, headwear, baseball cards, memorabilia, posters, photographs, pennants, patches, decals, collectibles, bags, drinkware, and computer and video games, among others. Appx5619-20; Appx5424.

Appellees made significant trademark use of the Judge Marks with apparel and other goods prior to July 14, 2017 and October 12, 2017 (Chisena's constructive use dates). The Judge Marks were placed on the products, as well as used in close proximity with the product at the point of sale. *See, e.g.*, Appx4257-59; Appx4309; Appx5120-22; Appx3266; Appx4325-26; Appx2694; Appx5651-53. Licensees also referenced Mr. Judge's HERE COMES THE JUDGE and ALL RISE branded products under the designation ALL RISE and HERE COMES THE JUDGE. *See, e.g.*, Appx5720-21 ("HERE COMES THE JUDGE"); Appx5822-24 (same); Appx4306 ("All Rise"); Appx4318-19 (same); Appx4374-82 ("AARON JUDGE ALL RISE"); Appx4483 ("ALL RISE – Aaron Judge"); Appx5017; Appx5035-36.

A representative sampling of the many designs featuring Aaron Judge and bearing the Judge Marks that MLBPA's licensees have produced and sold includes the following:

- In December 2016, licensee Bored in Class, d/b/a 500 Level's began selling JUDGEMENT DAY apparel bearing an image of Mr. Judge holding a gavel. Appx3583-85; Appx3657-58; Appx3661; Appx3681; Appx3692.
- At least as early as May 2017, licensee 108 Stitches began selling AARON JUDGE t-shirts bearing a seal containing the scales of justice over a baseball design, a swinging batter, the wording NEW YORK DEPARTMENT OF JUSTICE, and Mr. Judge's number. Appx4056-58; Appx4124-25; Appx 4128; Appx4144.
- At least as early as June 2017, licensee New Era began selling 99 AARON JUDGE and crossed judicial gavels caps. Appx4968-69; Appx5022-26; Appx5017.
- At least as early as June, 2017, licensee Fan Print began selling ALL RISE t-shirts with a swinging batter design and Mr. Judge's name and number. Appx4402-03; Appx4469; Appx4482; Appx4488.
- At least as early as June 2017, licensee New Era began selling ALL RISE baseball caps. Appx4965; Appx5007-13; Appx5017. *See also* Appx4966-67 (ALL RISE caps).

- In June 2017, licensee Fanatics began selling ALL RISE t-shirts depicting Mr. Judge swinging a gavel and Mr. Judge's name and number. Appx5427-28; Appx5574-77; Appx5637.
- In June 2017, licensee Bored In Class began selling ALL RISE t-shirts (a gavel forms the letter "I") with Mr. Judge's initials and number. Appx3587-88; Appx3751-56; Appx3692; Appx3714.
- In June 2017, Fan Print began selling ALL RISE apparel with Mr. Judge's name and a hand grasping a gavel with Mr. Judge's number. Appx4405; Appx4469; Appx4483; Appx4501.
- In June 2017, licensee Outerstuff began selling HERE COMES THE JUDGE t-shirts with a gavel design on a baseball diamond background. Appx5676-77; Appx5804-05; Appx5720-21; *see also* Appx5671-78 (apparel offered in connection with Judge Marks, sold "at least as early as June 2017").
- In June 2017, licensee The Emblem Source began selling ALL RISE, THE JUDGE, and JUDGEMENT DAY clothing patches. Appx5339-40; Appx5411-13.
- In June 2017, licensee Outerstuff began selling THE JUDGE'S CHAMBERS t-shirts with a baseball diamond design. Appx5674-75; Appx5798-99; Appx5720-22.

- On July 13 2017, licensee Coed obtained MLBPA's approval for a HERE COMES THE JUDGE on a baseball diamond design t-shirt. Coed began selling the shirt that month. Appx4325-26; Appx4398-99; Appx4374-94.[2]

The licensees adopted this branding under the Judge Marks as an "obvious play on" Mr. Judge's surname, and as the only Major League player with a surname having a judicial and legal connotation, this branding was unique to Mr. Judge. Appx5426 ("Mr. Judge was the only member of a Major League baseball team with a surname and nickname with a judicial and legal connotation."); Appx4059 ("To my knowledge, Aaron Judge is the only athlete who has been marketed in connection with judicial symbols and legal phrases, as the use of such symbols and phrases is an obvious play on his surname."); Appx3592 (same); Appx4261 (same); Appx4326-27 (same); Appx4406 (same); Appx4707 (same); Appx4970 (same); Appx5123 (same); Appx5341 (same); Appx5679 (same); Appx4180 (same); Appx5624-26; Appx5618. Mr. Judge has fully embraced this branding, even naming his charitable foundation the Aaron Judge ALL RISE Foundation, which helps children and youth become responsible citizens. Appx5626.

---

[2] Although, the Coed Declaration does not specify that this design was used prior to Chisena's July 14, 2017 constructive use date, this evidence establishes use of the diamond design prior to Chisena's October 12, 2017 filing date for his design mark, and continued *bona fide* use of the HERE COMES THE JUDGE mark.

## IV. APPLICANT SEEKS TO REGISTER AND USE MARKS ASSOCIATED WITH MR. JUDGE

Chisena is an individual who resides in Garden City, New York. Appx3522. He claims he first heard of Mr. Judge in 2017, does not know Mr. Judge, and does not have any connection with him. Appx263-65; Appx6361.

Chisena seeks to register the marks HERE COMES THE JUDGE, ALL RISE, and  (collectively, "Chisena's Marks") with the United States Patent and Trademark Office (USPTO) for apparel items, including t-shirts, shirts, and caps, in International Class 25. Appx3522-49. Chisena claims to have "thought about and considered the design and creation of" the marks ALL RISE and HERE COMES THE JUDGE between "2012 and 2015." Appx6390. Chisena also claims to have first contemplated the Design Mark in 2015, Appx6393, and to have worked on drawing the Design Mark with his uncle from 2015 until "prior to the Christmas holiday in 2016." Appx6391-94.

Despite direct requests from Appellees, Chisena has failed to produce any objective documentary or metadata evidence to support this purported timeline for his development of any of Chisena's Marks. *See, e.g.*, Appx182 (requesting production of Chisena's development files along with "any metadata that might be associated with it so we can know when it was created"); Appx205-06 (requesting

the email by which Chisena's Design Mark was originally sent to Chisena). Instead, Chisena relies solely on his self-serving say-so for the proposition that he developed the marks ALL RISE, HERE COMES THE JUDGE, and a baseball field covered with judicial indicia placed in right field, prior to Mr. Judge becoming a household name.

Chisena took no action to pursue registration of any of Chisena's Marks until July 10, 2017, when he first contacted his trademark counsel. Appx274 (privilege log identifying Chisena's first communication with counsel regarding Chisena's Marks as July 10, 2017). July 10, 2017 is the same day that Mr. Judge participated in and won the nationally-televised and widely-covered 2017 Home Run Derby. Appx939; Appx964; Appx1849-50; Appx3020; Appx3194. Mr. Judge's fans attended the Home Run Derby holding ALL RISE signs and wearing judge's garb, including judicial robes and wigs. Appx3396 at 1:53:36/1:56:25 (YouTube screenshot); *see also* Appx5621-22; Appx1221-24.

On July 14, 2017, four days after Mr. Judge won the Home Run Derby and three days after he participated in the widely-covered All-Star Game, Chisena filed intent-to-use trademark applications with the USPTO for ALL RISE (assigned Serial No. 87/528,414) and HERE COMES THE JUDGE (assigned Serial No. 87/5298,440). Appx3522; Appx3531.

Chisena filed an intent-to-use trademark application for the Design Mark

(assigned Serial No. 87/643,089) on October 12, 2017, near the end of Mr. Judge's record-breaking Rookie season, Appx5622-23. Chisena did not file the Design Mark Application with the others because he claimed he was still working on it with his uncle:

> Q. Why was the application for the logo mark filed several months after the applications for the Here Comes the Judge and the All Rise marks were filed? A. I was working with my uncle who helped me design this logo for us. My uncle assisted me in designing the logo.

Appx203-04.[3] Chisena's intent-to-use applications filed with the USPTO on July 14, 2017 and October 12, 2017 are collectively referred to herein as "Chisena's Applications."

By the time Chisena filed his application for the Design Mark in October 2017, Mr. Judge was being called "Baseball's Best New Hope" by Time magazine, People magazine and USA Today were running general-interest pieces on him, and The Guardian was projecting that he could "become baseball's richest player" through his many endorsement offers – or as they put it, the "Aaron Judge marketing earthquake." Appx803; Appx1357; Appx913-18; Appx808; *see also* Appx928; Appx948; Appx952; Appx1243.

Chisena's Applications all cover the following apparel items in International

[3] In his declaration submitted to the Board, Chisena asserted that in October 2017, he "finally decided . . . not to make any changes to the design logo which [his] uncle had previously emailed to [him]" prior to Christmas 2016. Appx6394-95.

Class 25:

> Clothing, namely, t-shirts, shirts, shorts, pants, sweatshirts, sweatpants, jackets, jerseys, athletic uniforms, and caps

("Chisena's Goods"). Appx3522; Appx3531; Appx3540. Chisena's Goods are identical to and overlap with products licensed and sold under the Judge Marks. Appx5421-25; *see generally supra* at 7-10 (licensee declarations). The descriptions of Chisena's Goods in Chisena's Applications do not state any limitation on the channels of trade or customers. Also, none of the marks that are the subject of Chisena's Applications claim color. Appx3522; Appx3531; Appx3540.

Chisena did not use any of Chisena's Marks in commerce in connection with any of Chisena's Goods prior to the time Chisena's Applications were filed. Appx166; Appx190-95; Appx209-13. It was not until June 9, 2018—nearly three months after this proceeding commenced—that Chisena first sold t-shirts printed with Chisena's Marks. Appx166; Appx221-22 (first sale June 9, 2018). To date, Chisena has not sold any other of Chisena's Goods under Chisena's Marks. The t-shirts, which were navy and white (*i.e.* the colors of Mr. Judge's New York Yankees), were sold at fairs on Long Island, New York organized and operated by his family's business on June 9, 2018, October 7-8, 2018, and December 1-2, 2018. Appx221-22; Appx233-34; Appx237; Appx247-48.

Chisena engaged L.I. Printhouse to print his navy and white t-shirts. Appx6359-60. Mr. Douglas O'Connor, the owner of L.I. Printhouse, expressed

concern to Chisena about printing t-shirts with Chisena's Marks because Mr. O'Connor associated Chisena's Marks with Mr. Judge, and he did not want to take any action that would infringe Mr. Judge's rights. Appx646-48 ("Q. So who was the person that came to your mind when Mr. Chisena asked you to print these T-shirts? A. Aaron Judge."). Only when Chisena represented that he had the trademark rights to use the marks did Mr. O'Connor capitulate and agree to print the shirts. Appx647 ("I was told that there was a – that they had the trademark rights."); Appx649-50 ("Q. So Mr. Chisena told you that he was allowed to present [sic] these slogans and this logo on the T-shirts? A. Yes, he said he had the whatever, the copyright, the trademark, the patent, whatever it was.").

## V. PROCEEDINGS BEFORE THE BOARD AND THE BOARD'S OPINION

Chisena's Applications published for opposition on November 21, 2017 (HERE COMES THE JUDGE), January 23, 2018 (ALL RISE), and February 27, 2018 (Design Mark), respectively, and Appellees timely opposed the registration of Chisena's Marks. Appx73-74; Appx66-67; Appx75-76. On February 1, 2019, the Board consolidated Opposition Nos. 91242556, 91243244, and 91240180 (parent). Appx67.

During the Board proceedings, Chisena failed to depose any witness, either in the discovery or trial phase. Nor did he offer any of his own evidence to rebut any of Appellees' evidence establishing prior use of the Judge Marks. Instead, Chisena's

evidence was directed to wholly irrelevant matters such as his college coursework and transcripts, patents, the Brooklyn hockey-themed trademark applications that he filed around the time that the New York Islanders of the National Hockey League relocated to Brooklyn, and a gavel and scale that his mother received in connection with her work for a "local grammar school PTA." Appx6348-55. Mr. Chisena also submitted sworn testimony asserting that he had developed his marks prior to and independent of any knowledge of Mr. Judge. Appx6357-61.

Chisena conceded that Chisena's Marks were likely to cause confusion with the Judge Marks. Appx51 ("Applicant does not address the *DuPont* factors in his brief, apparently conceding likelihood of confusion . . . ."). At trial, Chisena raised, for the first time, a series of legal arguments regarding waiver, adoption, distinctiveness, and a purported failure of the Judge Marks to function as trademarks—many of which he repeats on appeal. Appx6247-300.

The Board properly rejected all of Chisena's arguments and sustained the Oppositions, holding that (1) Appellees were entitled to a statutory cause of action and had adequately pled their claims (Appx13-18; Appx29-32); (2) the Judge Marks were inherently distinctive of the t-shirts and headwear on which they were used by Appellees (Appx32-33) (3) Appellees had established that the Judge Marks functioned as trademarks and that the Judge Marks had priority over Chisena's Marks because the Judge Marks had been used in commerce "to indicate a

connection to Mr. Judge" and "signified Mr. Judge to the relevant consuming public" before the dates Chisena filed Chisena's Applications (Appx36-42; Appx48-50); and (4) Chisena's Marks were likely to cause confusion with the Judge Marks. Appx61.

Further, with respect to Chisena's claim to have developed his marks prior to and independent of any knowledge of Mr. Judge, the Board found that his "timing, and choice of marks and colors are indeed eybrow-raising, and his protestations of good faith strain credulity," and thus "negate[d] Applicant's protestations of good faith" adoption. Appx60.

In light of the foregoing, the Board did not address Appellees' other grounds for opposition, including that the marks suggest a false connection with Mr. Judge and comprise the name of Mr. Judge without his consent. Appx82-84; Appx6354-6356; Appx6372-74; Appx6229-41; Appx61. Accordingly, even if Chisena succeeds on appeal (he should not—the Board's decision should be affirmed in full), this case should be remanded to the Board to decide Opposers' additional grounds for opposition.

## SUMMARY OF ARGUMENT

The Board correctly sustained Appellees' oppositions to the registration of Chisena's applications for the marks ALL RISE, HERE COMES THE JUDGE, and the Design Mark based on a likelihood of confusion with Appellees' prior-used marks. The Board found that Appellees established (1) entitlement to a statutory

cause of action, (2) priority, and (3) a likelihood of confusion. *See generally* Appx13-61.

The only issue before the Court on this appeal is that of "priority." Chisena's Brief at 4. Chisena conceded below, and does not contest on appeal, that the likelihood of confusion factors weigh in favor of Appellees. Appx51.

With respect to priority, Chisena concedes that Appellees' licensees made sales of products bearing the Judge Marks prior to Chisena's constructive use dates of July 14, 2017 and October 12, 2017. *See supra* at 7-10. Chisena failed to depose any of the licensees that submitted testimony establishing these prior sales, or to offer any evidence in rebuttal, or to contest the fact or timing of these sales in any other way. The evidence Mr. Chisena did submit before the Board—namely testimony to have developed the marks independent of any knowledge of Mr. Judge—was not found to be credible. Appx60.

Further, Chisena does not appear to renew his argument that Appellees were not entitled to maintain a statutory cause of action in the first instance. Appx6269-72.

Accordingly, Chisena's appeal is limited to whether the Board had a reasonable basis to find that the sales predating Chisena's constructive use dates constituted the use of valid, distinctive trademarks. Brief at 28-64. Chisena also raises a number of arguments regarding whether Appellees adequately preserved

their grounds for opposition. Brief at 6-28.

The Court should affirm the Board's rulings on these issues. First, Appellees sufficiently pled, proved, and argued the various issues that Chisena incorrectly argues were waived, namely (1) the Judge Marks owned and asserted in the proceedings, (2) their distinctiveness, and (3) "secondary source." The parties engaged in discovery relating to each of the Judge Marks and, as the Board found, Chisena was on fair notice of each of the marks at issue in the proceeding. *See, e.g.*, Appx6421; Appx6447.

Second, substantial evidence supports the Board's finding that the licensees' sale of goods prior to Chisena's constructive use dates demonstrated Appellees' prior use of valid, distinctive trademarks. Chisena's suggestion that the marks ALL RISE and HERE COMES THE JUDGE are somehow not distinctive of the apparel goods to which they were affixed is a non-starter. Moreover, Appellees provided overwhelming evidence that the Judge Marks function as source indicators, including:

- Webpages predating Mr. Chisena's constructive use dates clearly using the Judge Marks as trademarks;
- Testimony from 11 licensees on their use of the Judge Marks as marks and their development of products to identify and associate with Mr. Judge, and
- Numerous news articles associating the Judge Marks with Mr. Judge

and documenting consumers' association of the Judge Marks with Mr. Judge. Chisena failed to offer any evidence in rebuttal.

Finally, as found by the Board, the use of the Judge Marks as trademarks constitutes "adoption," and, therefore, ownership of the Judge Marks by Appellees.

In light of the foregoing, the Court should affirm the Board's decision in full.

## ARGUMENT

### I. STANDARD OF REVIEW

The Court reviews the Board's "legal conclusions de novo and its findings of fact for substantial evidence." *Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 (Fed. Cir. 2018). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.* (quoting *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1321 (Fed. Cir. 2014)). "Where two different conclusions may be warranted based on the evidence of record, the [Board]'s decision to favour one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *Id.* (quoting *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007)).

## II. CHISENA HAS CONCEDED APPELLEES' PRIOR SALES OF PRODUCTS BEARING THE JUDGE MARKS AND THE RECORD ESTABLISHES APPELLEES' PRIOR RIGHTS IN THE JUDGE MARKS

Chisena appeals the Board's decision on the issue of priority. Priority may be established "based on prior use" of a mark. *Araujo v. Framboise Holdings Inc.*, 99 F.4th 1377, 1380 (Fed. Cir. 2024) (citing *Herbko Int'l v. Kappa Books*, 308 F.3d 1156, 1162 (Fed. Cir. 2002)). Neither use "in commerce" nor any particular degree of market penetration is required to establish priority before the Board. *See, e.g.*, *Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1578 n.4 (Fed. Cir. 1991); s*ee also First Niagara Ins. Brokers Inc. v. First Niagara Fin. Group Inc.*, 476 F.3d 867, 870 (11th Cir. 2007) ("[T]he plain language of [15 U.S.C. § 1052(d)] . . . merely requires the prior mark to have been 'used in the United States by another.'"); *E.I. du Pont de Nemours & Co. v. Big Bear Stores, Inc.*, 161 U.S.P.Q. 50, 51 (T.T.A.B. 1969) (holding bona fide test marketing and small volume of experimental sales sufficient to show use of a mark and establish priority).

Because Chisena's Applications were filed on an intent-to-use basis and he concedes that he did not begin selling any product bearing Chisena's Marks until after Chisena's Applications were filed (Appx166; Appx190-95; Appx209-13), the earliest dates Chisena can claim for priority purposes are the filing dates for Chisena's Applications, namely July 14, 2017 (ALL RISE and HERE COMES THE JUDGE marks) and October 12, 2017 (the design mark). Appx158; *see Zirco Corp.*

*v. Am. Tel. & Tel. Co.*, 21 U.S.P.Q.2d 1542, 1544 (T.T.A.B. 1991).

The testimonial and documentary evidence of record, however, unequivocally establishes that Appellees' use of the Judge Marks preceded Chisena's first use dates, as was necessary for Appellees to prevail on their Section 2(d) claim. *See supra* at 4-10; *see also W. Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d 1122, 1125 (Fed. Cir. 1994) ("[O]ne should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use."), quoted in *Exec. Coach Builders, Inc. v. SPV Coach Co.*, 123 U.S.P.Q.2d 1175, 1184 (T.T.A.B. 2017) (testimony from witnesses sufficient to establish priority of use, especially when corroborated by documentary evidence); *see also Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 U.S.P.Q.2d 1921, 1931 (T.T.A.B. 2011) (noting testimonial evidence corroborated by documentary evidence is ideal), *aff'd*, 188 F. Supp. 3d 22 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018).

Chisena failed to challenge Appellees' evidence of prior use of the Judge Marks during discovery, at trial below, or on this appeal, thus conceding it. Notably, Chisena did not depose any of Appellees' witnesses, including the MLBPA's licensees, nor did he take any action to rebut the substantial evidence of Appellees' use of the Judge Marks prior to Chisena's earliest priority dates. Accordingly, the Board correctly found that the Judge Marks had priority over the Chisena Marks.

Because Appellees proved their claim under Section 2(d) of the Trademark Act, the Board's Order should be affirmed.

On appeal, rather than challenge the evidence of Appellees' prior sales in connection with the Judge Marks or the Board's conclusions based upon this evidence, Chisena focuses on whether: (1) Appellees properly pleaded and identified the Judge Marks; (2) the claimed marks are in fact protectable as trademarks; and (3) Appellees pleaded and proved ownership, use, and adoption of the Judge Marks. For the reasons outlined below, this Court should reject each of Chisena's arguments and affirm the Board's Order.

## III. THE BOARD CORRECTLY HELD THAT APPELLEES' PLEADINGS PROVIDED FAIR NOTICE OF APPELLEES' MARKS, AND THAT CHISENA WAS AFFORDED A FULL AND FAIR OPPORTUNITY TO LITIGATE THIS ISSUE IN THE PROCEEDINGS

### A. Appellees' Pleadings Satisfied the Applicable Pleading Standards

The Board correctly held that Chisena had "fair notice" of the basis for Appellees' priority claim, as well as the marks asserted, and Chisena had "a full and fair opportunity to this litigate the issues in the proceedings." Appx32.

In the ALL RISE opposition, "Judge Marks" was defined as "ALL RISE, alone and with other terms." Appx31; Appx6352. In the HERE COMES THE JUDGE opposition, "Judge Marks" was defined as "JUDGE, alone and with other terms." Appx31; Appx80. In the Design Mark opposition, "Judge Marks" was

defined as "judicial terminology, including, but not limited to, Judge's surname, JUDGE, HERE COMES THE JUDGE and ALL RISE, and judicial symbols, including gavels, alone and with other terms and designs." Appx31; Appx6369-70. In each case, Appellees also pled that the respective Judge Marks had been "continuously used prior to the filing date of [Chisena's application] and have not been abandoned." Appx6353; Appx81; Appx6370. As the Board noted, to the extent Chisena believed Appellees' pleadings to be deficient, he "could have and should have" challenged them in a timely matter, "either in a motion for more definite statement or a motion to dismiss," but did not did so. Appx 29, Appx31; TBMP §§ 503, 505.[4]

The Board also correctly rejected Chisena's argument, repeated here, that Appellees were limited to the Judge Marks identified on the ESTTA cover sheet for each proceeding and that the allegations in the corresponding Notices of Opposition must be ignored as "unavailing," noting that "[s]ince ESTTA's inception, the Board has viewed the ESTTA filing form and any attachments thereto as comprising a

[4] Not only did the pleadings provide notice of Appellees' claims, but it is apparent that Chisena knew and fully understood Appellees' claims from his discovery requests and trial evidence. Indeed, as discussed below, Chisena served discovery requests seeking information about the "HERE COMES THE JUDGE" mark. Appx6421; Appx6447. Accordingly, Chisena was not only aware of Appellees' assertion of the HERE COMES THE JUDGE mark, he actively sought and obtained discovery on it. Chisena also identified and submitted the HERE COMES THE JUDGE application filed by Mrs. Judge during his testimony period. Appx6467; Appx6475-77.

single document or paper being filed with the Board." Appx29-30 (citing *PPG Indus. Inc. v. Guardian Indus. Corp.*, 73 U.S.P.Q.2d 1926, 1928 (T.T.A.B. 2005)). The Board further explained that "[t]he ESTTA-generated filing form is thus considered part of the plaintiff's initial pleading—not its entirety." Appx30 (citing *Flame & Wax, Inc. v. Laguna Candles, LLC*, 2022 U.S.P.Q.2d 714, at *3 n.4 (T.T.A.B. 2022).

Chisena argues that Appellees were obligated to specifically identify or list each of their marks that form the basis of the oppositions, and that defining "Judge Marks" in the ALL RISE opposition to mean "ALL RISE, alone and with other terms" (Appx6352), defining the "Judge Marks" in the HERE COMES THE JUDGE opposition, to mean "JUDGE, alone and with other terms" (Appx80), and defining the "Judge Marks" in the Design Mark opposition to mean "judicial terminology, including, but not limited to, Judge's surname, JUDGE, HERE COMES THE JUDGE and ALL RISE, and judicial symbols, including gavels, alone and with other terms and designs" (Appx6369-70) was insufficient. However, as the Board correctly noted Rule 8(a)(2) of the Federal Rules of Civil Procedure (made applicable to Board proceedings by 37 C.F.R. § 2.116(a)) simply requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Appx30 (citing, *inter alia*, 37 C.F.R. § 2.104(a) ("The opposition must set forth a short and plain statement showing why the opposer believes he, she or it would be damaged by the registration of the opposed mark and

state the grounds for opposition."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Lewis Silkin LLP v. Firebrand LLC*, 129 U.S.P.Q.2d 1015, 1016 (T.T.A.B. 2018) (quoting Fed. R. Civ. P. 8(a)(2), (e) (other internal citations omitted)).

Appellees' pleadings meet this standard. The Board correctly concluded that Appellees' definition of the "Judge Marks" in each of the oppositions, as detailed above, was sufficient to put Chisena on notice that Appellees claimed rights in other marks that included the term JUDGE, such as HERE COMES THE JUDGE, as well as marks that included the phrase ALL RISE combined with other terms, and various judicial terminology, including, but not limited to, Judge's surname, JUDGE, HERE COMES THE JUDGE and ALL RISE, and judicial symbols, including gavels, alone and with other terms and designs. Appx31. *See, e.g., Just Enters., Inc. v. O'Malley & Langan, P.C.*, 560 F. Supp. 2d 345, 349 (M.D. Pa. 2008) (denying motion to dismiss complaint, holding language in complaint stating that "use of (888) JUSTICE and 'similar infringing phrases'" by defendant met Rule 8 notice pleading standard and provided defendant with fair notice of the conduct alleged to infringe plaintiff's marks).

In addition, as held by the Board, Appellees adequately pled under the notice pleading standard that the Judge Marks in each opposition had been "continuously used prior to the filing date of the Application and have not been abandoned."

Appx31. The law is clear that pleading priority does not require identification of a single specified priority date. TBMP § 309.03(c)(2) (priority requires "showing proprietary rights in its pleaded mark that are prior to defendant's rights in the challenged mark"); *see, e.g.*, *Marks v. Fivable Inc.*, No. 91271815, 2024 WL 4133070, at *3 (T.T.A.B. Aug. 30, 2024) (party had established priority based on testimony of use "since at least 2013").

**B. The Judge Marks Were Tried By Implied Consent**

As argued by Appellees below and acknowledged by the Board, even if Appellees had not fairly pled the Judge Marks, which they did, Chisena indisputably knew the marks that were at issue in this proceeding—and tried it accordingly—for over three-and-a-half years. Fed. R. Civ. P. 15(b)(1)-(2); TBMP § 507.03(a)-(b); Appx31 (finding that Chisena knew "of [Appellees'] claim to these marks for years during the course of this proceeding, from initial disclosures through discovery and trial"). Further, he did not object to Appellees' introduction of any evidence relating to marks that included additional terms or judicial symbols or designs with the terms JUDGE (*e.g.*, HERE COMES THE JUDGE) and ALL RISE. Appx70-71. Thus, the issue was tried by implied consent and evidence related to Appellees' rights in and to marks that included the terms JUDGE (*e.g.*, HERE COMES THE JUDGE) and ALL RISE with additional terms and/or judicial symbols or designs were properly considered by the Board. *See, e.g.*, *Am. Compliance Techs., Inc. v. Advanced Chem.*

*Transp., Inc.*, No. 9207259, 2023 WL 2496311, at *5 (T.T.A.B. Mar. 2, 2023) ("even assuming A-C-T and A•C•T could be considered unpleaded marks, we find that these matters were tried by implied consent" where "Respondent was fairly apprised that they are at issue and has not objected to them, and the parties addressed these marks in discovery"); *Productos Lacteos*, 98 U.S.P.Q.2d at 1926 (finding issues tried by implied consent where "respondent did not raise a timely objection to the introduction of any testimony or evidence regarding the marks . . . [and] respondent was fairly apprised that petitioner was claiming ownership of and prior use for those marks" through discovery).

Indeed, discovery was taken regarding all of the Judge Marks. Appellees produced documents and information identifying each of the Judge Marks at issue and relating to use of the marks. For example, with respect to the HERE COMES THE JUDGE mark, on August 27, 2018, MLBPA identified the HERE COMES THE JUDGE mark in its initial disclosures to Chisena, Appx6414, and on September 21, 2018, Chisena issued written discovery requests to Appellees, specifically regarding Appellees' and their licensees' use of the "HERE COMES THE JUDGE" mark. For example, Chisena's Interrogatory No. 16 stated: "Has Opposer, or its licensee, ever used a name, mark or designation that includes the phrase 'Here Comes the Judge'?"; and Chisena's Request for Production No. 25 sought: "All documents and things referring to any usage of a name, mark or designation that

includes the phrase 'Here Comes the Judge', whether by Opposer or its licensee." Appx6421; Appx6447. Chisena also identified and submitted the HERE COMES THE JUDGE application filed by Mrs. Judge with his trial evidence. Appx6467; Appx6475-77. Accordingly, Chisena was not only aware of Appellees' ownership claims regarding the HERE COMES THE JUDGE mark, he actively sought and obtained discovery and submitted trial evidence on it. Chisena also received voluminous discovery regarding Appellees' ownership and use of the ALL RISE mark by itself and in combination with other terms and symbols, as well as marks consisting of and including judicial symbols and designs. Therefore, any suggestion by Chisena that the Judge Marks were not a part of this case is disingenuous, and all evidence submitted by Appellees concerning the Judge Marks was properly considered by the Board.

To the extent deemed necessary, Appellees sought at trial, as was their right, to amend their pleadings to conform to the evidence. Appx71; TBMP § 507.03(a)-(b); *see, e.g., Cross Country Bank v. Cross Country Fin. Corp.*, Serial No. 75/387,134, 2003 WL 21716216, at *4 (T.T.A.B. July 22, 2003) (finding issue tried by implied consent and allowing amendment where "Applicant . . . had a full and fair opportunity to take discovery with respect to the additional claims which were plainly being asserted by opposer and to present its own evidence with respect thereto"); *see also Good Humor Corp. v. Popsicle Japan K.K.*, 810 F. Supp. 1001,

1008-09 (E.D. Wis. 1992) (granting Rule 15(b) motion to amend claim where "both parties have acted as if the claim is part of the case" and "discovery has included this claim"). The Board properly held it would not be necessary for Appellees to amend the pleadings because "'[i]n inter partes proceedings before the Board, as in civil cases before the United States district courts, all pleadings are so construed as to do justice,'" and Chisena "was afforded a full and fair opportunity to litigate the issues." Appx31-32 (citing TBMP § 309.03 (echoing Fed. R. Civ. P. 8(e): "Pleadings must be construed so as to do justice.")).

The pleadings thus provided fair notice of Appellees' claimed marks, and Chisena was afforded a full and fair opportunity to litigate the issues. As such, the Board's Order should be affirmed.

## IV. THE JUDGE MARKS ARE TRADEMARKS

### A. The Judge Marks Are Distinctive

The term "distinctive" is a "term of art in trademark law." 1 McCarthy on Trademarks & Unfair Competition § 11:2 (5th ed.). A designation must be distinctive to be a trademark. *See id.* ("No distinctiveness—no mark."). A mark can be either inherently distinctive or acquire distinctiveness through secondary meaning. *See id.* "A common law mark is deemed distinctive if it appears to be inherently distinctive on its face, at least in the absence of evidence to the contrary." *Julien v. Desty*, No. 91268147, 2023 WL 11758473, at *5 (T.T.A.B. Aug. 11, 2023);

*see, e.g.*, *Hainline v. Vanity Fair, Inc.*, 301 F. App'x 949, 953 (Fed. Cir. 2008) (finding that "the word 'vanity' is distinctive or arbitrary, as applied to clothing" because it was "a known word used in an unexpected or uncommon way"); *Lindeboom v. Plaster City Digital Post, LLC*, No. CV088077SVWJTLX, 2009 WL 10670660, at *3 (C.D. Cal. Apr. 29, 2009) (accepting argument "that the mark 'Creative Cow' is arbitrary because cows have nothing to do with the digital media production industry" where defendant did not assert any argument to the contrary). Marks that are fanciful, arbitrary, or suggestive "are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). It is apparent that the Judge Marks are each inherently distinctive with respect to the goods at issue.

**1. The Judge Marks Do Not Describe the Goods with Which They Are Used**

The Board correctly found that the marks "ALL RISE and HERE COMES THE JUDGE do not describe the apparel on which they appear, such as t-shirts, jerseys, and caps, and are thus inherently distinctive." Appx32. There is no basis to disturb this common-sense ruling. Indeed, as the Board noted, Chisena has tacitly admitted that the marks when used on apparel are inherently distinctive by seeking his own registrations for the identical marks covering identical goods, without a claim of acquired distinctiveness. Appx33; *see* Appx3522-26; Appx3531-35; 3540-45. Chisena's attempt to distinguish his applications on this point only underscores

that the USPTO examiner who evaluated his applications did not perceive these same word marks to be descriptive of the same goods. *See* Brief at 34.

Chisena argues that Appellees must establish that the Judge Marks are "arbitrary" to be considered inherently distinctive. *See* Brief at 30-33. Chisena misstates the law. *See Two Pesos, Inc.*, 505 U.S. at 768. Regardless, the Board found the Judge Marks to be arbitrary, and Chisena presents no argument or evidence to disrupt that ruling. Appx32-33. But even if, as Chisena argues, ALL RISE and HERE COMES THE JUDGE were merely suggestive of t-shirts and caps (because the marks are associated with Mr. Judge, a prominent baseball player, and baseball is associated with t-shirts and caps, the argument apparently goes, *see* Brief at 32-33), the law is well-established that suggestive marks are also inherently distinctive trademarks because they do not describe goods with which they are used. *See Two Pesos*, 505 U.S. at 768.

**2. Chisena—Not Appellees—Waived the Distinctiveness Issue**

The Board correctly found that Appellees' adequately pled and otherwise maintained that the Judge Marks were distinctive. Appx32-33.[5] Chisena cites no case law supporting that Appellees' pleadings were insufficient, never mind that

[5] Chisena notes that page 48 of his brief did not contain a concession that Appellees pled distinctiveness. *See* Brief at 29. He is correct—the concession was on page 47. Appx6293 ("Opposers made claim in each respective *NOO* that the alleged 'Judge Marks' were distinctive. . . .").

Appellees somehow waived distinctiveness. *See* Brief at 28-32. In fact, Chisena has the issue backwards—Chisena waived the distinctiveness defense by failing to raise it at any point prior to his trial brief. *See Chicago Corp. v. North Am. Chicago Corp.*, 20 U.S.P.Q.2d 1715, 1717 n.5 (T.T.A.B. 1991).

"A plaintiff . . . must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014); *see also Lewis Silkin LLP*, 129 U.S.P.Q.2d at 1016 ("federal standard of notice pleading [is] followed by the Board"). "The federal rules . . . mak[e] it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Johnson*, 574 U.S. at 12.

Here Appellees appropriately pled the factual basis for distinctiveness, namely: (1) the Judge Marks themselves (ALL RISE, HERE COMES THE JUDGE, JUDGE, and judicial terms and symbols), (2) that "the Judge Marks have been used as trademarks on and in connection with . . . apparel products," and (3) that "[t]he Judge Marks are distinctive." Appx80-81; Appx6352-53; Appx6369-70. The Board correctly found that Appellees satisfied the pleading standard. Appx32 ("[A]s Chisena admits, Appellees' Notices of Opposition claim that their marks are distinctive."). Further, Appellees produced and submitted an overwhelming amount of evidence demonstrating that the marks were affixed to goods that they do not

describe, such as t-shirts and caps, *see, e.g.*, *supra* at 7-10, and addressed distinctiveness in Appellees' opening trial brief, Appx6243-45.

Through selective quoting, Chisena disingenuously argues that Appellees' reply brief before the Board conceded lack of inherent distinctiveness by arguing that the Judge Marks had acquired secondary meaning. *See* Brief at 33-34. Appellees actually said: "**even if the Judge Marks were somehow deemed to lack inherent distinctiveness, which they do not**, the record is replete with evidence to support the conclusion that the Judge Marks acquired secondary meaning." Appx6315 (emphasis added). There was no concession. Moreover, Chisena fails to appreciate a bedrock principle of trademark law that marks that have acquired distinctiveness are trademarks. *Two Pesos*, 505 U.S. at 769 (citations omitted).

### 3. "Judge" Is Not Primarily Merely a Surname

Next, Chisena argues that the term JUDGE alone is not distinctive because it is Mr. Judge's surname. *See* Brief at 34-36. As the Board correctly held based upon the substantial evidence of record, Chisena's argument is a "red herring" because Appellees' opposition is not limited to the mark JUDGE. Appx33.

"The test for determining whether a mark is primarily merely a surname is the primary significance of the mark as a whole to the purchasing public." *In re Hutchinson Tech. Inc.*, 852 F.2d 552, 554 (Fed. Cir. 1988). The Board correctly decided that JUDGE was not primarily merely a surname "[i]n the context of the

entire phrase HERE COMES THE JUDGE," and therefore was not descriptive on this basis. Appx33-34. Chisena identifies no legal error with this determination. Indeed the authority Chisena cites sets out this very same test applied by the Board. *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 1377 (Fed. Cir. 2017) ("[T]o evaluate whether the commercial impression of a mark that combines a surname with a second term is still primarily merely the surname, the PTO must determine whether the primary significance of the mark as a whole in connection with the recited goods and services is that of the surname."). *See* Brief at 35 (citing *Earnhardt*).

Using the correct test, the Board properly found that the mark HERE COMES THE JUDGE is not primarily merely a surname of the goods at issue in light of its ordinary language meaning and the perception of the "relevant purchasing public," as demonstrated by Appellees' substantial evidence. Appx33-34 (citing, *inter alia*, *Fisher Radio Corp. v. Bird Elec. Corp.*, 162 U.S.P.Q. 265, 267 (T.T.A.B. 1969)); *see, e.g.*, Appx1694; Appx2654; Appx2663-72; Appx2674; Appx2676; Appx5624; Appx2755-57; Appx3353; Appx3391; Appx5676-77; Appx5804-05; Appx5720-21; Appx4325-26; Appx4398-99; Appx4374-94. Chisena fails to cite a single piece of evidence refuting the Board's finding that the public perceives HERE COMES THE JUDGE, as a whole, as not primarily a surname, *see* Brief at 34-36, precluding reversal.

In any event, the term JUDGE alone has "a primary significance other than as a surname," namely, that of a public official authorized to decide matters brought before a court of law, which Chisena acknowledges. *See In re Etablissements Darty Et Fils*, 759 F.2d 15, 17 (Fed. Cir. 1985) ("Even though a mark may have been adopted because it is the surname of one connected with the business, it may not be primarily merely a surname under the statute because it is also a word having ordinary language meaning."); *see, e.g.*, *In Re Luckenbach Texas, Inc.*, No. 87800638, 2022 WL 634434, at *9 (T.T.A.B. Feb. 22, 2022) (finding that LUCKENBACH was not primarily merely a surname because "the mark has one or more recognized meanings other than as a surname because it comprises a key word in the title of a famous Waylon Jennings song and German-speaking U.S. consumers would recognize it as 'gap creek'"); TMEP § 1211 ("The legislative history of the Trademark Act of 1946 indicates that the word 'primarily' was added to the existing statutory language 'merely' with the intent to exclude registration of names such as 'Johnson' or 'Jones,' but not registration of names such as 'Cotton' or 'King' which, while surnames, have a primary significance other than as a surname.") (citing *Sears, Roebuck & Co. v. Watson*, 204 F.2d 32, 33-34 (D.C. Cir. 1953)). Chisena admits this, Appx150, and it is underscored by the ample evidence of licensees and the public making judicial plays on the JUDGE name, *see supra* at 4-10. *See In re Hutchinson Tech. Inc.*, 852 F.2d at 554 (test is "significance of the mark as a whole

to the purchasing public”). As such, the term JUDGE is not primarily merely a surname and can function as a trademark.

#### 4. ALL RISE Is Distinctive of Apparel

Finally, Chisena appears to argue that the Board improperly based its finding that ALL RISE is distinctive on its use as a nickname for Mr. Judge. *See* Brief at 36-37 (arguing under heading “Distinctiveness re: nickname of ‘All rise’ for Judge” that “neither Opposers nor TTAB can argue or find that All Rise is Judge’s nickname for purposes of priority”). The opposite is true—in finding the mark distinctive, the Board clearly stated that “[i]t does not matter whether it’s technically a nickname or not.” Appx35-36. Following established case law, the Board focused on the use of ALL RISE in connection with apparel—which it does not describe—to find that it was distinctive. Appx36. Chisena ignores the uncontroverted evidence relied on by the Board, namely, Appellees’ licensees’ sale of “t-shirts and baseball caps bearing the ALL RISE mark as early as June 2017,” *i.e.*, before Chisena’s filing date. Appx36; *see also* Appx21-24 (citing evidence of sales).

### B. The Judge Marks Are Source Indicators

Instead of attempting to refute the timing of Appellees’ sales, *see supra* Section II, Chisena’s priority defense is based on a claim that the sales did not constitute trademark use. The Court should affirm the Board’s finding that Appellees’ prior uses of the Judge Marks indicate Mr. Judge as a source of the goods

and thus constitute *bona fide* trademark use, establishing Appellees' priority. Appx42-48.

A trademark is "any word, name, symbol, or device, or any combination thereof . . . to identify and distinguish . . . goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. "[T]he source identifier requirement . . . typically focuses on how the mark is used in the marketplace and how it is perceived by consumers." *In re GO & Assocs., LLC*, 90 F.4th 1354, 1356 (Fed. Cir. 2024); *see also In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 1351 (Fed. Cir. 2022) ("In analyzing whether a proposed mark functions as a source identifier, the Board focuses on consumer perception."). "Whether or not a mark functions as a source identifier is a question of fact . . . review[ed] for substantial evidence." *In re GO & Assocs., LLC*, 90 F.4th at 1357.

#### 1. Appellees Made *Bona Fide* Trademark Use of the Judge Marks

Appellees presented substantial evidence of the Judge Marks being used with all the hallmarks of *bona fide* (non-ornamental) trademark use, *i.e.*, on the product itself and/or in close proximity to and close association with apparel at the point of sale. *See* 15 U.S.C. § 1127 ("a mark shall be deemed to be in use in commerce—(1) on goods when—(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents

associated with the goods or their sale”); *see, e.g.*, *In re Dell Inc.*, 71 U.S.P.Q.2d 1725, 1729 (T.T.A.B. 2004) (finding trademark usage of term on webpage). For example:

| | | |
|---|---|---|
|   |   |  |
| Appx4257-59; Appx4302-09. | Appx4965; Appx5007-13; Appx5017.[6] | Appx4967-68; Appx5022-28; Appx5017; Appx3266. |

*See also* Appx3262; Appx4324-4326 (“The trademark HERE COMES THE JUDGE was prominently displayed at the point of sale of the apparel and in close proximity to and close association with the apparel, and the trademark HERE COMES THE JUDGE was used as a brand name to identify the apparel.”); Appx2694; Appx5629-31; Appx5648-53; Appx4705-06; Appx4750-66; Appx4778; Appx5340-41; Appx5416-18; Appx2749; Appx3590-91; Appx3860; Appx4402-05; Appx4469; Appx4482-83; Appx4488; Appx4496; Appx4501; Appx4516; Appx4518;

---

[6] Contrary to Chisena’s argument that this use of ALL RISE on a cap cannot constitute trademark use, Chisena placed the ALL RISE mark in the very same location on his own product mock-ups. Appx338-47; *see* 15 U.S.C. § 1127 (“a mark shall be deemed to be in use in commerce--(1) on goods when--(A) it is placed in any manner on the goods”); *Three Blind Mice Designs Co. v. Cyrk, Inc.*, 892 F. Supp. 303, 311 (D. Mass. 1995) (finding mark not merely ornamental because it was used “on hats in a way which has been used by other companies to designate the source of the goods”).

Appx4520; Appx4523; Appx4527; Appx3447; Appx3461; Appx3473; Appx3476; Appx3481; Appx3489. This use occurred prior to Chisena's constructive use dates, establishing Appellees' priority. *See supra* at 7-10 and *see, e.g.*, Appx4257-59 (ALL RISE); Appx4302-09; Appx4965-68 (ALL RISE); Appx5007-13; Appx5017; Appx5022-28; Appx3266; Appx5629-44 (ALL RISE, judicial indicia: COURT IS IN SESSION, JUDGE'S CHAMBERS, GAVEL); Appx4323-26 (judicial indicia: ALL RISE, HERE COMES THE JUDGE); Appx4370-98.

**2. Consumers Associated the Goods Bearing the Judge Marks with Mr. Judge**

The key determinant of whether a designation identifies source and is thus a trademark is consumer perception. *In re GO & Assocs., LLC*, 90 F.4th at 1356; *In re Vox Populi Registry Ltd.*, 25 F.4th at 1351; *see Univ. Book Store v. Univ. of Wisc. Bd. of Regents*, 33 U.S.P.Q.2d 1385, 1405 (T.T.A.B. 1994) (trademark usage "is a question of fact as to whether consumers view such indicia as 'merely ornamental' or as symbols that identify a secondary source of sponsorship"); *see id.* at 1406 (finding marks registrable where "a significant portion of the purchasing public associates the marks with applicant as *particular source* for the goods"); *see also In re Larry Harmon Picture Corp.*, Serial No. 74/468,324, 2001 WL 1546642, at *5-6 (T.T.A.B. Nov. 15, 2001) (finding that comedy duo's "signature phrase" used as ornamentation on front of t-shirt functioned as a trademark because "[t]he relevant purchasing public would make the association"). "The 'ornamentation' of a t-shirt

can be of a special nature which inherently tells the purchasing public the source of the T-shirt, not the source of manufacture but the secondary source." *Harmon*, 2001 WL 1546642, at *3 (quoting *In re Olin Corp.*, 181 U.S.P.Q. 182, 182-83) (T.T.A.B. 1973)).

Appellees submitted substantial, unchallenged, unrebutted evidence demonstrating that consumers associated the licensed goods bearing the Judge Marks with Mr. Judge prior to Chisena's filing dates. *See, e.g.*, Appx5424-31; Appx3447; Appx3476; Appx3481; Appx3507-08; Appx3511; Appx5613-53; Appx3581-92; Appx4054-59; Appx4176-80; Appx4255-61; Appx4309-11; Appx4321-4327; Appx4400-07; Appx4488; Appx4496; Appx4501; Appx4516; Appx4518; Appx4520; Appx4523; Appx4527; Appx4702-08; Appx4778; Appx4962-71; Appx5117-23; Appx5337-42; Appx5669-80; Appx1912-13; Appx2504-08; *see also supra* at 4-10.

In contrast, Chisena has put forth **no** evidence to rebut the source-identifying nature of the Judge Marks. *See, e.g.*, *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1583 (Fed. Cir. 1988) (affirming finding that "guitar heads . . . function as significant indications of source" where "the record is . . . without any evidence of real substance to the contrary"). Nor did he depose any of Appellees' witnesses. To the contrary, and as noted by the Board, Chisena conceded that the Judge Marks convey a connection to Mr. Judge to consumers. Appx43-46. Chisena's bare

assertions on appeal that the Judge Marks are "mere ornamentation" or mere "informational messaging" and do not function as a trademark thus fail. *See* Brief at 38-39.

Based on Appellees' overwhelming evidence, the Board therefore correctly found that, prior to Chisena's filing dates, consumers strongly associated the Judge Marks with Mr. Judge and perceived them, as displayed on the licensed goods, as indicating Mr. Judge as a source for those goods.[7] Appx36-48. Moreover, as discussed above, Appellees put forth substantial evidence of non-ornamental trademark use from which priority can be established independent of any ornamental uses, and Chisena conceded that the Judge Marks convey a connection to Mr. Judge to consumers. *See supra* at 38-40. There are no grounds to disturb the Board's finding.

#### a. Prior Non-Ornamental Use of the Judge Marks with Other Goods or Services Is Not a Prerequisite to Their Functioning as Secondary Source Marks—Consumer Perception Controls

Chisena appears to argue that Appellees must first show their prior non-ornamental trademark use in connection with Appellees' own, different goods or services before ornamentation appearing on licensed goods can be secondary source

[7] Contrary to Chisena's assertions, the Board did not "agree[]" with him or "conclude[] that the slogans ALL RISE and HERE COMES THE JUDGE and word mark JUDGE were not commercial source indicators." *See* Brief at 38. The Board, in fact, expressly held that each of the Judge Marks had been used as trademarks, pointing to Mr. Judge as the source of goods bearing those marks. Appx36-48.

indicators. *See* Brief at 52. No such prerequisites exist.

As a preliminary matter, Chisena never argued before the Board that the Judge Marks did not function as source identifiers because the goods to which they were affixed were not manufactured by Appellees. *See generally* Appx6247-300; *see, e.g.*, Brief at 43 (noting that "Hoffmann [Chisena's attorney before the Board] never once used the words 'secondary source' in my 55-page brief."). Chisena thus waived this issue. *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1175 (Fed. Cir. 2019) (finding "arguments . . . raised for the first time on appeal and are therefore waived"); *Singhal v. Mentor Graphics Corp.*, 328 F. App'x 648, 650 (Fed. Cir. 2009) ("This court generally does not consider arguments raised for the first time on appeal.").

Further, Chisena's assertion turns trademark licensing on its head. The law is clear. "[A] trade or service mark may be acquired through its use by controlled licensees, even though the registrant itself may not have used the mark." *Turner v. HMH Pub. Co.*, 380 F.2d 224, 229 (5th Cir. 1967) (citation omitted); *Cent. Fid. Banks, Inc. v. First Bankers Corp. of Fla.*, 225 U.S.P.Q. 438, 440 (T.T.A.B. 1984) ("[O]wnership rights in a trademark . . . may be acquired through controlled use by one's related companies (or licensees) even in the absence of any use by the applicant, registrant or purported owner." (citations omitted)); *see also Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 128 (4th Cir. 2019) ("[I]t is black letter law that a licensee's use of a mark inures to the benefit of the licensor." (citing 15

U.S.C. § 1055)). Appellees provided substantial evidence of their control over their licensees' use of the Judge Marks through detailed license agreements and a robust product review and approval processes, which Chisena failed to rebut or challenge in any way. Appx5421-5430; Appx5535-72; Appx3582-92; Appx4055-59; Appx4177-80; Appx4256-61; Appx4322-27; Appx4401-06; Appx4703-08; Appx4963-71; Appx5118-23; Appx5338-41; Appx5670-79. Accordingly, any use by the licensees that established trademark rights inured to Appellees' benefit. There is no line to be drawn between the licensed goods and any goods and services provided directly by Appellees, and there is no requirement for Mr. Judge to identify goods or services he personally sold to establish trademark rights.

It is well-established that secondary source trademark use can be established in a variety of ways. Chisena misreads TMEP § 1202.03(c) as providing an exhaustive list of grounds to establish that ornamentation on another's goods indicates source, namely a party's prior registration or non-ornamental use of the mark on "other goods or services." *See* Brief at 39, 52. TMEP section 1202.03(c) provides a **non-exhaustive** list of grounds for a finding of secondary source, including prior registration or use of a mark in connection with other goods or services. *See id.* ("[t]o show secondary source, the applicant **may** show . . ." (emphasis added)). The Board thus correctly found that prior registration or use was not required to find secondary source. Appx47 ("The qualifications for serving as a

secondary source indicator are not, however, limited to the TMEP's examples. . . . [C]onsumer perception controls . . . ." and "We do not believe . . . that the qualifications for serving as an indicator of a secondary source are so limited.").

Case law further establishes that ornamentation on a t-shirt can function as a secondary source trademark absent "evidence of record that the phrase already is a recognized trademark of applicant for any services or goods." *Harmon*, 2001 WL 1546642, at *5-6; *see also In re Lizzo LLC*, 2023 U.S.P.Q.2d 139, 2023 WL 1507238, at *12 (T.T.A.B. Feb. 2, 2023) (finding applicant's song lyrics 100% THAT BITCH functions as a trademark for Class 25 goods). As in *Harmon* and *Lizzo*, the Judge Marks were well-associated with Mr. Judge, and thus consumers perceived them as indicating Mr. Judge as a source of the apparel to which they were affixed, regardless of whether they were previously "used" as trademarks on different goods or services provided directly by Mr. Judge or not.

Chisena incorrectly states that the Board "misapplied" its prior ruling in *In re Pro-Line*, 28 U.S.P.Q. 2d 1141 (T.T.A.B. 1993). *See* Brief at 53. Consistent with Federal Circuit precedent, *In re Pro-Line* identifies the key determinant for secondary source as whether "purchasers recognize that matter as an indication of the source of the goods." *Pro-Line*, 28 U.S.P.Q. 2d at 1142. Chisena's argument that *In re Pro-Line* "was not saying that there are other ways [in addition to TMEP § 1202.03(c)] to prove a secondary source trademark" is belied by the fact that it sets

out a notably different list from in TMEP § 1202.03(c), as well as its use of "etc." *See* Brief at 54; *see In re Pro-Line*, 28 U.S.P.Q. 2d at 1142 (ornamentation on t-shirt "may also be found to be registrable if [party] submits other evidence (such as evidence of promotion of the matter as a mark, survey evidence demonstrating purchaser perception of the matter as a mark, **etc.**) showing that purchasers recognize that matter as an indication of the source of the goods" (emphasis added) (citation omitted)). *In re Pro-Line* also does not address the separate issue of "secondary meaning" as Chisena says it does. *See* Brief at 54.

Nor do the other Board decisions Chisena cites support his argument. *See* Brief at 51-60. None of the cases Chisena cites hold that the ornamentation **must** be previously registered or used as the applicant's mark for other goods to serve as a secondary source indicator. *In re Olin Corp.*, 181 U.S.P.Q. 182, 182-83 (T.T.A.B. 1973); *In re Paramount Pictures Corp.*, 213 U.S.P.Q. 1111 (T.T.A.B. 1982); *Paddington & Co. v. Lead Co.*, 2009 WL 4073519, at *3 (T.T.A.B. May 29, 2009). In *In re Lululemon Athletica Canada Inc.*, 105 U.S.P.Q.2d 1684, 1690 (T.T.A.B. 2013), the applicant failed to established that a sweatshirt design was the same visually as its previously used and registered marks, but the Board did not state that ornamentation must be pre-registered or used as a trademark for other goods or services to serve as a secondary source indicator. *Id.* Finally, Chisena cites *In re Larry Harmon Picture Corp.*, *see* Brief at 59-60, which, as discussed above, directly

refutes his argument. *See* 2001 WL 1546642, at *5-6. Chisena's assertion that a mark cannot be a primary and secondary source indicator is unsupported and at odds with his argument that a mark must first be a primary source indicator before it may be a secondary source indicator. *See* Brief at 46.

Chisena also does not support the portion of his argument that would require a trademark owner's prior uses to be in connection with different types of goods or services. *See* Brief at 52. The reference in TMEP § 1202.03(c) to "other goods or services" merely acknowledges that, to the extent prior usage has been made on the **same** type of goods or services at issue, it would have established the very rights sought to be established via the licensee goods, mooting the issue. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015) ("One who first uses a distinct mark in commerce thus acquires rights to that mark.") (citation omitted).[8]

But even if Chisena were correct that Appellees must show prior registration or their own (not their licensees') non-ornamental usage on other goods or services, Appellees would meet that test as well. As discussed above, Appellees adduced evidence that the Judge Marks were used extensively in connection with Mr. Judge's baseball entertainment services, for example:

- "Beginning in [his] Rookie season in 2017, the Yankees . . . put ALL RISE up

[8] That is the case here—the non-ornamental uses pre-dating Chisena's filing date establish Appellees' prior rights. *See supra* at 38-40.

on the videoboard during [Judge's] first at-bat at every Yankees home game." Appx5625.

- As early as April 1, 2017, the hashtags #ALLRISE and #HERECOMESTHEJUDGE were used on social media to signify Mr. Judge's baseball services, including by the Yankees. *See supra* at 4.
- In May 2017, the Yankees created a cheering section in Yankee Stadium for Mr. Judge called THE JUDGE'S CHAMBERS, wherein fans were provided a foam gavel souvenir bearing the ALL RISE mark as well as a judge's robe, and often carried signs that said ALL RISE. *See supra* at 5.
- Mr. Judge's home runs were celebrated on the radio and television broadcasts using the phrases HERE COMES THE JUDGE and ALL RISE. *See supra* at 5.
- Publications such as Sports Illustrated and amNewYork used the phrases ALL RISE, HERE COMES THE JUDGE, and other judicial plays on Mr. Judge's name to refer to Mr. Judge's baseball services. *See, e.g.*, *supra* at 4.

In sum, Mr. Judge's baseball entertainment services were branded with ALL RISE, HERE COMES THE JUDGE, and judicial phrases and symbols in just about every way imaginable. The Board's finding that other uses of these marks on t-shirts and other goods were perceived by the public as pointing uniquely to Mr. Judge as a secondary source is thus supported by substantial evidence. *See supra* at 4-10. Moreover, the Judge Marks were also used on patches prior to Chisena's

constructive use date. Appx5339-40. Contrary to Chisena's argument, such patches are IC 26 goods, not IC 25 goods, and thus meet any definition of "other goods." *See* Brief at 64; *see, e.g.*, USPTO Trademark ID Manual, Term ID 026-98.

**b. Appellees Have Pleaded and Proven Use of the Judge Marks**

Contrary to Chisena's argument that Appellees somehow waived the secondary source issue, Brief at 40-47, Appellees have made clear from the inception of these proceedings that the Judge Marks were used by MLBPA's licensees and pointed to Mr. Judge as the primary source of his entertainment services and as the secondary source of the licensees' apparel and items. *See Univ. Book Store*, 33 U.S.P.Q.2d at 1396 ("The subject marks identify applicant [University of Wisconsin] as the primary source of its educational and entertainment services and as the secondary source of the apparel imprinted with such marks."). MLBPA's licensees were interested in using the Judge Marks for their apparel and other products because of the entertainment services offered by Mr. Judge, who was a "famous, widely known and highly regarded professional baseball player." Appx80; Appx6353; Appx6370. Appellees' pleadings plainly state that the products to which the Judge Marks were affixed—and upon which Appellees relied—were manufactured and sold by Appellees' licensees: "[T]he Judge Marks have been **<u>used as trademarks</u>** on and in connection with **<u>the goods of Opposer's licensees</u>,** including apparel products. . . ." Appx80 (emphases added); Appx6353; *see also*

Appx6370. Appellees' pleadings further specify that "[a]s result of the use of the Judge Marks by Judge and by [MLBPA]," consumers "associate[] the Judge Marks, and the goods and services provided in connection with those marks, with Judge." Appx81; Appx6353; Appx6370.

Moreover, the record shows that Chisena understood from these pleadings that secondary source was at issue. In discovery, Chisena issued document requests and interrogatories directed specifically to products and services offered by MLBPA "or its licensee," Appx6420-21; Appx6447. In response to those requests, Appellees produced voluminous documents establishing that the products at issue were manufactured and sold by the licensees, including license agreements, licensee product approval forms, and royalty reports. *See, e.g.*, *supra* at 7-10, 38-40.

Appellees' opening trial brief likewise explained that the goods at issue were produced and sold by Appellees' licensees. Appx6209-11 ("Starting in May and June, 2017, MLBPA's licensees began selling apparel, caps, and other products branded with the marks ALL RISE and HERE COMES THE JUDGE."); Appx6218 (arguing in support of priority that "Opposers, **<u>through MLBPA's licensees</u>**, used the Judge marks in connection with goods, including but not limited to apparel . . . before both of Applicant's filing dates" and citing licensee declarations (emphasis added)).

Chisena's argument that Appellees somehow waived that the Judge Marks were used as trademarks for Mr. Judge's "entertainment services" (*see* Brief at 55), is also belied by the pleadings themselves, which identify Mr. Judge as a well-known baseball player for the New York Yankees, and state that the Judge Marks have been used in connection with various goods and services, Appx80; Appx6352; Appx6369, as well as the evidence of use outlined above, all of which was produced to Mr. Chisena in discovery and discussed in Appellees' trial brief, Appx6205-11.

## V. APPELLEES PLEADED AND PROVED OWNERSHIP AND USE, AND THEREFORE, ADOPTION, OF THE JUDGE MARKS

The Board correctly found, based on the ample evidence of record, that Appellees pleaded and proved ownership and use of the Judge Marks. Chisena contends, however, that Appellees were required to and failed to plead and prove ownership and adoption and use of the Judge Marks. The pleadings and the evidence of record disprove this. Each Notice of Opposition alleges that: Mr. Judge "has proprietary rights" in the Judge Marks, that Appellees "used and acquired rights" in the Judge Marks, and that Appellees had "prior rights" in the Judge Marks. *See, e.g.*, Appx80-86; Appx6352-58; Appx6370-75. Of course, this language in the Notices of Opposition constitutes plain allegations of ownership, adoption, and use of the Judge Marks.

Semantics aside, Appellees adduced ample evidence to establish that Appellees owned the Judge Marks and, through MLBPA's licensees, adopted and

made use of the Judge Marks. *See supra* at 7-10, 38-40. Also, Appellees and MLBPA's licensees did in fact use the Judge Marks in connection with goods that were sold and distributed in commerce. Ownership of a trademark derives from use of that mark in commerce, and ownership in a trademark may be acquired and maintained solely through the use of the mark by a controlled licensee. *See Cent. Fid. Banks, Inc.*, 225 U.S.P.Q. at 440.

In arguing that Appellees failed to plead and prove adoption of the Judge Marks, Chisena erroneously relies on *Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.*, 811 F.2d 1470, 1472-74 (Fed. Cir. 1987), which is factually distinguishable. There, the Board held that the opposer had not adopted a mark by merely sending a single shipment of samples "solely for obtaining an opinion of [applicant's] mark." *Id.* at 1474. Here, in contrast, Appellees actually sold, through MLBPA's licensees, goods bearing the Judge Marks in commerce. *See supra* at 7-10, 38-40.

In light of the foregoing, Chisena's arguments on this point should summarily be rejected, and the Board's Order should be affirmed.

### A. Appellees' Rights in and to the Judge Marks Are Determined By Making Use Of Those Marks, Not By Language in Documents, Use of the ™ Symbol, or Filing of Trademark Applications

Ignoring the significant evidence establishing Mr. Judge's trademark rights in and to the Judge Marks, Chisena advances a plethora of flawed arguments that elevate form over substance. This Court should disregard these arguments, addressed below, as they do not impact or diminish the uncontroverted evidence of trademark use by Appellees through MLBPA's licensees.

#### 1. The Language in the MLBPA License Agreements and Product Approval Forms Is Not Dispositive

Chisena's focus on whether Appellees and MLBPA's licensees perceived the Judge Marks to be trademarks is wholly irrelevant to the issue of ownership and adoption. Appx37. Here, regardless of the definitions in the license agreements or the absence of an express "reference to any trademarks being declared as such" in the licensee product approval forms, the plain evidence of record establishes that the judicially-themed language was placed on the products to indicate a connection between the products and Mr. Judge. *See, e.g.*, Appx4323 ("Coed purposefully paid tribute to Mr. Judge's surname, nickname, and persona in these designs by using judicial and legal terminology and symbols such as gavels."); Appx4326 ("the apparel features judicial indicia, including the phrases 'ALL RISE' and 'HERE COMES THE JUDGE' in connection with Aaron Judge"); Appx3583; Appx3592; Appx4056; Appx4059; Appx4178; Appx4180; Appx4257; Appx4261; Appx4402;

Appx4406; Appx4704; Appx4707; Appx4964; Appx4970; Appx5119; Appx5123; Appx5339; Appx5341; Appx5671; Appx5679.

Similarly, the inclusion of language on the licensee product approval forms relating to use of third party marks has no bearing on any issue in this proceeding and certainly provides no insight into whether the Judge Marks were used as trademarks.

Chisena's arguments regarding the language of the license agreements and the approval forms lack merit and should consequently be disregarded.[9]

**2. Use of the ™ Symbol is Not Required Under the Law**

There is no requirement under the law that a trademark owner mark their trademarks with the "TM" symbol. *See CSL Silicones, Inc. v. Midsun Grp. Inc.*, 301 F. Supp. 3d 328, 349 (D. Conn. 2018) (noting that "trademark ownership rights are established through use of the mark in commerce. The use of a 'TM' symbol in connection with a mark, either registered or unregistered, is not statutorily required, and does not, by itself, establish trademark rights" and holding that omission of

[9] Chisena's contention that he is at a disadvantage because he cannot review MLBPA's highly confidential license agreements lacks merit. Notably, this Court maintained MLBPA's confidentiality designations regarding the license agreements. Dkt. 28 at 2. In addition, Chisena was represented by counsel in the proceedings before the Board, who had complete access to these documents, and Chisena has access to the critical documents that establish Appellees' priority, ownership, and use of the Judge Marks, namely, the licensee declarations, the product approval forms, and representative samples of licensee royalty reports.

"'TM' symbol in literature, advertising, labels, or its agreements" was "not determinative of whether" plaintiff had protectable trademark rights). Accordingly, Appellees were not required to plead use of the 'TM' symbol to claim common law rights in their marks. Appx31; *see also* 3 McCarthy on Trademarks & Unfair Competition § 19:148 (5th ed.); *see CSL Silicones, Inc.*, 301 F. Supp. 3d at 349 (holding numerical designation "570" was protectable trademark despite fact that "TM" symbol was not used with designation). In addition, the fact that the approval forms did not reference use of the "TM" symbol in connection with the products subject to approval is irrelevant. *See id.* Chisena's argument to the contrary is wrong.

#### 3. The Licensee Declarations Confirm Use of the Judge Marks as Trademarks with Apparel and Other Goods

Chisena details the allegations of a number of the licensee declarations submitted by Appellees, seemingly to argue that the declarations do not constitute proof of trademark use of some or all of the Judge Marks, and that no declaration proves use of the mark JUDGE. This argument ignores the plain language of the declarations, which specify that the Judge Marks were used in commerce with certain products to identify the source of those products, thereby establishing trademark use of the Judge Marks. Appx3590-91; Appx4258-59; Appx4324-26; Appx4403-06; Appx4967-68; Appx5341; Appx5430. It also ignores the language of each licensee declaration that expressly refers to the use of Mr. Judge's name in connection with licensed products, as well as the evidence of use of JUDGE, *e.g.*,

on clothing patches, t-shirts and hats, attached to certain of those declarations. *See, e.g.,* Appx3583-90; Appx4056-58; Appx4257.

Chisena's argument that the licensee declarations do not specify when the licensees were informed of Mr. Judge's rights in and to the Judge Marks and instructed about their proper use ignores the existence of the license agreements. The license agreements identified players' names, nicknames, and other personal indicia as designations to be used in connection with products and specified, together with the licensee product approval forms, how those designations were to be used. Further, the agreements also required licensees to obtain MLBPA's approval prior to the sale of any products. Once Mr. Judge became a player and joined MLBPA, MLBPA's licensees understood that they could use the Judge Marks to indicate Mr. Judge. *See, e.g.*, Appx4257; Appx3583; Appx4056; Appx4257.

**4. That Appellees Did Not File Trademark Applications Does Not Diminish or Disprove Their Common Law Rights**

As noted above, trademark rights flow from use of a mark in commerce in connection with goods. Indeed, "it is a 'bedrock principle of trademark law' that trademark ownership '**is not acquired by federal or state registration**,' but rather 'from prior appropriation and actual use in the market.'" 2 McCarthy on Trademarks & Unfair Competition § 16:18.50 (5th ed.) (emphasis added) (citation omitted). The fact that Appellees assert common law rights, and do not own or assert registrations

or applications in this proceeding is of no moment. Chisena's argument to the contrary should be disregarded.

### 5. The Trademark Applications Filed By Mr. Judge's Mother Are Not Inconsistent with Mr. Judge's Claim of Common Law Rights in the Judge Marks

Contrary to Chisena's contention, the Board analyzed and rejected his argument below to the effect that Patricia Judge's applications are inconsistent with her son's claim of common law rights in the marks. This Court should similarly disregard this argument. The evidence of record establishes that Appellees have an entitlement to a statutory cause of action, that Mr. Judge owns a proprietary interest in the Judge Marks, and the intent-to-use applications filed by Mrs. Judge have no bearing on these issues.[10] Appx15-16.

Mrs. Judge, acting with Mr. Judge's express consent as Executive Director of the Foundation, filed intent-to-use applications with the USPTO to register the marks HERE COMES THE JUDGE and ALL RISE in standard characters on the Principal Register for shirts and t-shirts in Class 25. Appx6182-84; Appx6172-74.

As the Board correctly noted, Mrs. Judge claimed a *bona fide* intent to use the applied-for marks, but did not claim ownership of those marks. Appx16 (citing

---

[10] Chisena previously argued below that Appellees lacked standing because the applications filed by Mrs. Judge were inconsistent with Appellees' claimed ownership of the Judge Marks. On appeal, Chisena's argument appears to attack Appellees' ownership in and to the Judge Marks, but does not expressly refer to or clearly argue the issue of standing or entitlement to a cause of action.

*Norris v. Pave Promoting Awareness, Victim Empowerment*, 2019 U.S.P.Q.2d 370880, at *4 (T.T.A.B. 2019) ("There is no statutory requirement that the filer of an intent-to-use application be the owner of the mark at the time of filing of the intent-to-use application.")). In addition, the applications filed in the name of Mrs. Judge have no effect on Mr. Judge's standing and common law rights in the HERE COMES THE JUDGE and ALL RISE marks because they existed prior to, and are independent of, the trademark applications filed by his mother. Moreover, any defects in the ownership of his mother's applications are irrelevant because Appellees' case was not based on the applications filed by Mrs. Judge, and it does not depend on their validity. *See, e.g.*, *Broadway Catering Corp. v. Carla Inc.*, 215 U.S.P.Q. 462, 466 (T.T.A.B. 1982) ("Opposer's case is not based on this application and does not depend on its validity; rather it is founded on the common law proprietary rights in the mark which, we conclude, were, at the time of the filing of the opposition, as well as at the time of its trial, owned by opposer.").

Chisena's arguments regarding Mrs. Judge's applications are a red herring. Nothing in Mr. Judge's consent thereto constitutes an assignment or abandonment of Mr. Judge's valuable common law rights, as the Board correctly held. Neither Mr. Judge nor Mrs. Judge's declarations make any reference to an assignment of Mr. Judge's preexisting common law rights, and, instead, their plain testimony reflects only a provision of consent to file applications. *See* 2 McCarthy on Trademarks &

Unfair Competition § 18:79 (5th ed.) ("A consent agreement . . . is not an assignment because neither party is assigning any rights of ownership in their mark to the other."). The Board explained in its Order that "a consent is not an assignment and relinquishment of rights." Appx16 (citing 3 McCarthy on Trademarks & Unfair Competition § 18:79 (5th ed. 2022) and *Mystery Ranch, Ltd. v. Terminal Moraine Inc.*, 2022 U.S.P.Q.2d 1151, at *14 (T.T.A.B. 2022) ("It is one thing to permit another to use one's name as a mark, quite another to relinquish all ownership rights in one's name and agree to allow another to register one's name.") (internal citation and punctuation omitted)). The Board observed that "the consent may have to be 'clothed' with additional restrictions to prevent confusion between the Foundation's branded goods and the MLBPA's, *see In re Dare Foods Inc.*, 2022 U.S.P.Q.2d 291, at *17-20 (T.T.A.B. 2022), but that eventuality, to be resolved between the Judges affords Chisena no defense." Appx16.

Further, there is no merit to Chisena's contention that Mr. Judge has "admitted that he did not use" and did not "have the right to use the word marks ALL RISE and HERE COMES THE JUDGE in commerce" because he consented to filing of the applications by his mother. The record establishes that the Judge Marks have been in continuous use, and predated the filing dates of Mrs. Judge's applications. *See supra* at 7-10, 38-40. The record also establishes Mr. Judge's rights to his ALL RISE and HERE COMES THE JUDGE nicknames, so there is simply no support

for the argument that this testimony is somehow inconsistent with Mr. Judge's pre-existing common law rights. Appx6182; Appx6172. Mrs. Judge filed the applications with Mr. Judge's All Rise Foundation, which seeks to leverage the fame and reputation embodied in the Judge Marks to help children. Appx6182-83. It would be contrary to law and equity to find that this would somehow divest Mr. Judge of those very rights.

Finally, to the extent that Chisena seeks to challenge Appellees' standing and entitlement to a cause of action on this appeal, the Board correctly noted that "Chisena's prior ITU applications, if registered, would block registration of Mrs. Judge's applications, furnishing Appellee Aaron Judge all the more reason to believe that damage would proximately result from registration of Chisena's marks." Appx16.

## CONCLUSION AND STATEMENT OF RELIEF

The evidence of record demonstrates that Appellees have priority in the Judge Marks. None of the issues raised on appeal warrant disturbing the Board's Decision, which is supported by the law and substantial evidence. Accordingly, the Court should affirm the Board's Decision sustaining the consolidated Opposition and refusing the registration of Application Serial Nos. 87/528,414, 87/528,440, and 87/643,089.

Dated: June 2, 2025

McCARTER & ENGLISH, LLP

*/s/ Lori J. Shyavitz*

Lori J. Shyavitz
Alexander T. Hornat
265 Franklin Street
Boston, MA 02110
P: (617) 449-6500
F: (617) 607-9200
lshyavitz@mccarter.com
ahornat@mccarter.com

Irene M. Hurtado
250 W. 55th Street, 13th Floor
New York, NY 10019
P: 212.609.6800
F: 212.609.6921
ihurtado@mccarter.com

*Counsel for Appellees*



ME1 53367892v.1

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2073

**Short Case Caption:** Chisena v. Major League Baseball Players Association

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 13,889 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 06/02/2025

Signature: /s/ Lori J. Shyavitz

Name: Lori J. Shyavitz